## GABBERT et al. v. CITY OF BROWNWOOD.

### No. 2424.

Court of Civil Appeals of Texas. Eastland.

Nov. 12, 1943.

Rehearing Denied Dec. 10, 1943.

McMahon, Springer & Smart, of Abilene, for appellants.

R. L. McGaugh and E. M. Davis, both of Brownwood, for appellee.

FUNDERBURK, Justice.

I. Oren Gabbert and Texas Employers' Insurance Association brought this suit against the City of Brownwood to recover damages for personal injuries sustained by Gabbert as the result of alleged negligence of defendant. Gabbert, an employee of Banner Creameries, attempting to get into a truck of his employer, stopped at night on a state highway in the City of Brownwood, stepped into the open unguarded end of a culvert which had been constructed by the State Highway Department and fell several feet, sustaining injuries. Texas Employers' Insurance Association, compensation insurance carrier for Gabbert's said employer, paid the employee compensation and joined in the suit as owner of the cause of action by subrogation under authority of Vernon's T.C.S. art. 8307, sec. 6a.

The negligence charged to defendant·was alleged as follows: "Plaintiffs allege that the City of Brownwood was negligent (a) in the construction of said culvert or in permitting same to be so constructed that same was built level with the ground and could not be seen by any person exercising reasonable precaution for· his own safety, particularly at night; (b) in failing to erect around said culvert a guard rail or other structure to permit persons lawfully at the place where said culvert was built from falling into the same; (c) in failing to place a sign near said culvert calculated to warn the public and other persons lawfully at the place where same was built of the danger of falling into the same and consequent injury which might result from such fall."

After the evidence was in the Court sustained a motion of defendant to withdraw the case from the jury and render judgment for defendant, which, being done, plaintiffs have appealed.

As the case is presented to this court, there is but one question for decision, which, as is often true, may be variously stated. In perhaps its most general terms the question may be said to be whether, under the pleadings and conclusively established facts, the City of Brownwood had no legal duty respecting the safety of the state highway at the place of the injury. This statement of the question assumes that the absence of such duty is conclusive, notwithstanding the other elements of liability may involve issues of fact not conclusively established and as to which the Court could not properly withdraw the case from the jury and render judgment. In other words, since there can be "no actionable negligence in the absence of some duty which has been neglected or violated" (Independent Eastern Torpedo Co. v. Carter, Tex.Civ.App., 131 S.W.2d 125, 126, and authorities cited) the action of the court below in withdrawing the case from the jury and rendering judgment for defendant was proper, if, under the uncontroverted evidence, the City had no duty, as stated; otherwise, it was improper.

"A failure to provide a barrier or lights to warn or guard travelers against defects or unsafe places in the street", says Tex.Jur., "may be negligence which will render the city liable for resulting injuries." 39 Tex.Jur. p. 690, § 121. And again, "It is the duty of· the municipality

to erect barriers or rails along a street at places where they are necessary to make the way safe for travelers who exercise ordinary care—or, as otherwise stated, where there is a dangerous place which is in such proximity to the street as to render the highway unsafe for purposes of travel." 39 Tex.Jur. p. 693, § 123. These general propositions could not be applicable to a city in its relation to a street or highway or section thereof, if any, over which it had no jurisdiction. Such liability, when it exists, is incident to the City's jurisdiction over the streets and highways of the city. If such jurisdiction exists, then, as incident thereof, the duty exists to construct and/or maintain such streets and highways. If such duty to construct and maintain its streets and highways exists, that duty comprehends the further duty of so constructing and maintaining them with reasonable care for the safety of the public using such streets or highways. Hence, it may be said that the question for decision is whether under the pleadings and uncontroverted evidence the City of Brownwood had jurisdiction of the particular section of the state highway within its limits where the accident occurred.

The charter of the City of Brownwood provides that "the City of Brownwood shall have exclusive dominion, control and jurisdiction in, upon, over and under the public streets, avenues, alleys, and *high-ways* of the city * * *." (Italics ours.) If that provision is valid and has not been repealed by later Act of the Legislature, then we think it is determinative of the question to be decided. So it appears that the question under consideration may not inaccurately be said to be whether the exercise of "dominion, control and jurisdiction" of the City of Brownwood "in, upon, over and under the public * * * highways of the city" has by Legislative act or acts been *taken from* said City and conferred upon the State Highway Department. (Italics ours.)

If there has been any such transfer of jurisdiction it may be assumed, we think, that it resulted from the legislative act of which R.S.1925, Art. 6673, is a part and specifically the provision of said article which reads as follows: "The Commission [State Highway Commission] is authorized to take over and maintain the various State Highways in Texas, and the counties through which said highways pass shall be free from any cost, expense or supervision of such highways * * *."

It is settled by the decisions that the last quoted statutory provision did operate to transfer the former jurisdiction of counties and/or county commissioners' courts over state highways within county limits to the State Highway Commission. Robbins v. Limestone County, 114 Tex. 345, 268 S.W. 915; Iverson v. Dallas County, Tex.Civ.App., 110 S.W.2d 255; Wilbarger County v. Hall, Tex.Com.App., 55 S.W.2d 797; Nairn v. Bean, 121 Tex. 355, 48 S.W.2d 584; Alexander v. Singleton, Tex. Civ.App., 50 S.W.2d 893; Mosheim v. Rollins, Tex.Civ.App., 79 S.W.2d 672. It, therefore, appears that yet another way of stating the question to be decided is whether the transfer of jurisdiction over state highways in a county from the county commissioners' court of such county to the State Highway Commission effected likewise a transfer of the jurisdiction of the cities and towns in such county over state highways in such cities and towns to the State Highway Commission?

The jurisdiction of commissioners' courts over highways prior to the transfer of such jurisdiction, as to state highways, effected, as aforesaid by said article 6673, had been granted in very general terms as follows: "The commissioners' courts of the several counties shall have full powers and it shall be their duty to order the laying and opening of public roads when necessary, and to discontinue or alter any road whenever it shall be deemed expedient as hereinafter prescribed." R.S.1911, Art. 6860. This and other provisions defining powers and duties of the commissioners' court now appear as R.S.1925, Art. 6703. This grant of jurisdiction to commissioners' courts apparently had its origin in an Act approved July 29, 1876. 8 Gammel's Laws, p. 899. Upon that grant of authority in its relation to a highway in an incorporated city or town, the same question in principle as the one here involved arose at an early date when the Supreme Court had criminal, as well as civil, jurisdiction, in State v. Jones, 18 Tex. 874. The question in that case was stated as follows: "The main, and indeed only essential question presented is one of conflict of jurisdiction between the County Court of Goliad county and the Town Council of the town of Goliad, in respect to the authority of these two bodies over the roads, streets and thoroughfares,

which run through and are within the incorporated limits of the town." From the very interesting discussion we quote the following as showing the true identity in principle, as we think, of the question there decided and the question here presented for decision. Said the court: "The County Court does, it is true, possess a general jurisdiction, co-extensive with the limits of the county, to lay out and establish public roads and highways, but as that jurisdiction is conferred by a general law which is applicable to every county in the State, it is at all times subject to be changed or modified by special laws acting upon the same subject in particular counties, *or special localities,* though such change will not affect the operation of the general law, except in these particular localities which are intended to be taken out of the rule." (Italics ours.) The final conclusion was expressed as follows: "In view of the whole subject I am of the opinion that the County Court had *no jurisdiction* over the road in question at the time the defendant was appointed Overseer of it; that its appointment conferred upon him *no authority* to require the contiguous hands to work it, and had he made such requisition, the hands would not have been bound to obey it; and that as he possessed neither the legal right or ability to make the road, or to keep it in repair, he is not responsible for its want of repairs." (Italics ours.)

In 1891 this same question was again presented in Norwood v. Gonzales County, 79 Tex. 218, 14 S.W. 1057, 1058, wherein the Supreme Court declared that the commissioners' court was without jurisdiction to open up a road through land within the corporate limits of the city of Goliad. That the word *jurisdiction* was used advisedly is shown by the holdings that the proceedings were without effect and incapable of ratification, even after the exclusion of the particular section of the road from the city limits, thereby placing it within the jurisdiction of the commissioners' court. This resulted, of course, from the familiar principle that whatever is void as distinguished from merely voidable, cannot be validated by ratification. The decision in Norwood v. Gonzales County, supra, has so far as we know, never been overruled and has been followed in the following cases: Benat v. Dallas County, Tex.Civ.App., 266 S.W. 539, writ refused, Reuter v. State, 43 Tex.Cr.

R. 572, 67 S.W. 505; Bluitt v. State, 56 Tex.Cr.R. 525, 121 S.W. 168, dissenting opinion; Cowand v. State, 83 Tex.Cr.R. 298, 202 S.W. 961; City of Breckenridge v. Stephens County, Tex.Civ.App., 26 S.W. 2d 405. It is true that the last mentioned case (by this court) was reversed by the Supreme Court, but that in so doing that court did not overrule the Norwood case is clearly shown by the following quotation from the opinion: "Of course, the town or city governing board primarily has *paramount jurisdiction* of the streets and highways thereof, and the commissioners' court would have no authority to improve streets or highways within municipalities in conflict with the jurisdiction of the city to improve the same." (Italics ours.) 120 Tex. 318, 40 S.W.2d 43, 44. The Stephens County case related to a street constituting a state highway and was decided after the transfer of the jurisdiction of commissioners' courts to the Highway Commission, as to state highways, under provision of said art. 6673, and the above quoted excerpt certainly lends no support to the proposition that it transferred all jurisdiction of city authorities over state highways in the corporate limits of a city.

Lending further support to the foregoing authorities, the Legislature itself took notice that a commissioners' court prior to the enactment of Art. 6673 had no jurisdiction of the highways in a city or town having a functioning government and by act of March 14, 1885 (referred to in the Norwood opinion) and now constituting the last sentence of R.S.1925, Art. 6703, provided that the commissioners' court "shall assume and have control of the streets and alleys in all cities and incorporated towns in Texas which have no defacto municipal government in the active discharge of their official duties."

Under these decisions and legislative construction, R.S.1925, Art. 6703, and articles like 1082 and 1086, with which latter the charter provision of the City of Brownwood above mentioned is classed, were each given effect under the rule or principle recognized in State v. Jones, supra, and stated in Tex.Jur. as follows: "In case of conflict between a general provision and a special provision dealing with the same subject the former is controlled or limited by the latter, and this is so whether the provisions in question are contained in the same act or in different

enactments. In other words, when a statute makes a general provision for all cases [as, for example, all highways in all counties] and a special provision for a particular case or class [as, for example, highways in cities and towns] the former yields and the latter prevails, insofar as the particular case or class is concerned. In such circumstances the special provision or statute is regarded as though it were an exception or proviso, removing something from the operation of the general law." 39 Tex.Jur. p. 212, § 114. Said Article 6673 in its relation to Article 6703, is also a special provision within the foregoing rule in that while Article 6703 in terms applies to all highways in all counties of the state, Article 6673 applies only to a particular kind of highways, namely, state highways. The effect of the latter is to lift out of the subject of Article 6703 all state highways and make different provisions concerning same. Article 6703 is left with precisely the same effect as if it had originally expressly excepted state highways. But what effect did the enactment of Article 6673 have upon said Articles 1082 and 1086 and charter provisions like that of the City of Brownwood, which in relation to Article 6703 were themselves special provisions? That may be said to be still another way of stating the question presented for decision.

 Viewing the subject matter as *jurisdiction,* there is a clear implication in Article 6673 that the jurisdiction which it transferred to the State Highway Commission was the jurisdiction which commissioners' courts theretofore had over such parts of state highways as were within the several counties. Such implication results from the clause reading "and the counties through which said highways pass shall be free from any cost, expense or supervision of such highways." Why express the relief of *counties* from "any cost, expense or supervision" and say nothing of the cost, expense and supervision by cities and towns, if the intended transfer was to affect both alike? Is not the conclusion inescapable that the only jurisdiction transferred was that theretofore possessed by county commissioners' courts? Under familiar principles the Legislature must be presumed to have been cognizant of the existing decisions and must have known that a transfer of only such jurisdiction as commissioners' courts had would not imply the transfer of such jurisdiction

as cities and towns had. Therefore, we think, charter provisions or other statutes giving cities and towns jurisdiction over highways therein remained special provisions, while Article 6673, although special in its relation to Article 6703, was general as to such charter provisions and said other statutes. In this view the Legislature, while it could have transferred jurisdiction of cities and towns over particular highways therein to the State Highway Department, nevertheless neither expressed nor implied any intention to do so.

In 1939 the Legislature amended the title of which said Article 6673 is a part by adding Article 6673—b, reading as follows: "The State Highway Commission is hereby authorized and empowered, in its discretion, to enter into contracts or agreements with the governing bodies of incorporated cities, towns, and villages, whether incorporated under the home rule provisions of the Constitution, Special Charter, or under the General Laws, providing for the location, relocation, construction, reconstruction, maintenance, control, supervision, and regulation of designated State highways within or through the corporate limits of such incorporated cities, towns, and villages and determining and fixing the respective liabilities or responsibilities of the parties resulting therefrom; and such incorporated cities, towns and villages are hereby authorized and empowered, through the governing bodies of such cities, towns, and villages to enter into such contracts or agreements with the State Highway Commission." Vernon's T.C.S. Art. 6673—b. This statute is relied upon by both parties in support of their diverse contentions. It is the position of defendant that since Article 6673 completely divested the city of jurisdiction of any part of a state highway in the city limits it could only be liable for a defect of construction or maintenance if it, under authority of said Article 6673—b, contracted or agreed with such effect; and that it had not so contracted or agreed. On the other hand, it is the position of plaintiffs that since Article 6673 had no effect to deprive cities and towns of jurisdiction over highways within their limits, and the liability consequent upon such jurisdiction could be affected, if at all, only by a contract or agreement, as provided in Article 6673—b, the fact that no such contract or agreement had been made was conclusive of the defendant's

liability for negligence. Strangely enough each position is logical; unfortunately the language of Article 6673—b sheds little, if any, light upon the question of which is the correct construction, being, so far as we can see, consistent with either. Under defendant's contention, the subject of the contract or agreement would, of course, be an undertaking of the City—a promise or obligation of the City to construct, maintain, etc. the highway or section thereof in the city limits. Under plaintiffs' contention the subject of such contract or agreement would be an undertaking of the State Highway Department—its promise or obligation—to construct, maintain, etc. As we see it, said Article 6673—b has no direct or controlling bearing upon the question for consideration. Its proper construction seems to be entirely dependent upon the answer to the question under consideration and affords no aid in the proper determination of that question.

█ If a question similar to the one herein presented arose upon a contract to which the plaintiff and defendant were parties, it might be said that a practical construction by the parties should govern their rights. It is shown that the State Highway Department procured the consent of the defendant to construct the section of highway of which the culvert in question is a part. Why should the Highway Department, if it had sole jurisdiction of the matter, seek the consent of the City, which, according to the defendant, had no jurisdiction? The action of the parties implied a recognition of the jurisdiction of the City and want of jurisdiction of the Highway Department. But obviously this may have resulted from a possible misunderstanding of the law by both the Highway Department and the city, and, if so, such misunderstanding should not be held decisive of a question of so great public concern.

█ Now let us assume, for the purpose of considering some of the consequences, that Article 6673 operated directly (which it did if at all) to transfer the former jurisdiction of cities and towns over the state highways therein to the State Highway Department. If it had such effect, the free exercise of such jurisdiction is, of course, in no manner dependent upon the consent of the municipality, nor can the latter interfere in any way with its free exercise by the former. All state highways passing through Dallas, Houston and San Antonio, for examples, could be routed through the principal street of any such city, and the city, being powerless to prevent it, would lose its jurisdiction over such street. If the paving of any such street gave away, the Highway Department could substitute gravel or dirt and the City would have no voice in the decision. The Highway Department could ignore the streets of any such city and lay out the state highway athwart such streets and adjacent property, condemning the property deemed necessary for such purpose. Vernon's T. C.S. Art. 6674n.

More effective than Article 6673—b, as indicating Legislative construction of Article 6673, is Article 6674n, authorizing commissioners' courts at county expense, but only as agents of the State Highway Department, to condemn lands and materials for "construction, reconstruction, or maintenance of State Highways." Will it be contended that this empowers county commissioners' courts to condemn lands and materials in the city limits of an incorporated city or town for state highway purposes? Why should the power be exercised at county expense rather than city or town expense?

The conclusion seems to us to be inescapable that the effect of Article 6673 was to confer upon the State Highway Department only the former jurisdiction of county commissioners' courts, which, although in terms broad enough to include the former jurisdiction of cities and towns, did not do so, for the very same reason they were not included in the jurisdiction of county commissioners' courts which said article transferred to the Highway Department.

We have been cited to but one decision—and have been unable to find any other—which, in our opinion, announces a conclusion contrary to the one reached by us. That decision is City of Wichita Falls v. Real Estate Trust, Tex.Civ.App., 135 S.W.2d 736. The cases therein cited as authority relate to the transfer of jurisdiction from the county commissioners' court to the State Highway Department, and it seems to have been assumed that if such was the effect with reference to the county commissioners' court it would follow as a matter of course that such would be the effect with reference to the governing bodies of cities, towns and villages. We have endeavored to point

out the reasons which impel us to a different conclusion.

If, as we have concluded, the City had jurisdiction and consequent duty, such duty was nondelegable as affecting an injured member of the public. "The duty of a municipal corporation," says Corpus Juris, "to keep its streets in repair and in safe condition for travel, when it has once arisen, cannot be delegated, as by entering into a contract under which a third person assumes the duty, so as to relieve the municipality from liability for injuries caused by failure to perform such duty." 43 C. J. p. 980, § 1761.

In our opinion the Court erred in withdrawing the case from the jury and rendering judgment for the defendant, and that, therefore, the judgment should be reversed and the cause remanded. It is accordingly so ordered.