

# THE ATTORNEY GENERAL

# OF TEXAS

## AUSTIN 11, TEXAS

PRICE DANIEL
ATTORNEY GENERAL

April 30, 1952

Hon. Boyd Barjenbruch        Opinion No. V-1449.
County Attorney
Montague County              Re:  Validity of the action
Montague, Texas                   of the commissioners'
                                  court in designating an
                                  "election box" for ab-
Dear Sir:                         sentee voting.

        In your request for an opinion of this of-
fice concerning the operation of certain provisions of
the Texas Election Code, which became effective on
January 1, 1952, you state that the Commissioners' Court
of Montague County has created 25 election precincts,
and has also created Election Box No. 26 to meet the re-
quirements of Subdivision 6 of Section 37 of the Elec-
tion Code, which pertains to the casting of absentee
ballots.

        Section 12 of the Election Code (Art. 2.04,
Vernon's Election Code) authorizes the commissioners'
court of each county to divide the county into conven-
ient election precincts, but limits the court's action
in the following respect:

        ". . . No election precinct shall be
    formed out of two (2) or more justice pre-
    cincts or commissioners precincts, nor out
    of the parts of two (2) or more justice pre-
    cincts or commissioners precincts. . . ."

        Under Section 37 of the Election Code (Art.
5.05, Vernon's Election Code), the method of casting
absentee ballots has been changed.  Formerly, under Sub-
division 6 of Article 2956, V.C.S., the county clerk for-
warded the absentee ballots voted by electors of each
election precinct to the presiding judge of that precinct,
and one of the election judges cast the ballots by plac-
ing them in the regular voting box of the precinct in the
same manner as voters appearing at the polls cast their
ballots.  The absentee ballots were then counted along
with all other ballots.  The procedure for casting and
counting absentee ballots under the present statute is

described in Subdivision 6 of Section 37 for county-wide elections and in Subdivision 9 for elections which are less than county-wide. Subdivision 6 reads as follows:

"The ballots cast in the office of the county clerk shall be deposited when voted in a ballot box locked with two (2) locks the keys of one of which shall be kept during the period of absentee voting by the sheriff and the keys of the other by the county clerk. At 1:00 p.m. on the day of the election the ballots and the ballot envelopes which have been received by mail shall be delivered by the county clerk to a special canvassing board of three (3) or more members named by the authority which is authorized by law to name the presiding judges of that election; this special election board shall open the ballot boxes and the carrier envelopes, announce the elector's name and compare the signature upon the application with the signature upon the affidavit on the ballot envelope. In case the election board finds the affidavits duly executed, that the signatures correspond, that the applicant is a duly qualified elector of the precinct, and that he has not voted in person at said election, they shall open the envelope containing the elector's ballot in such manner as not to deface or destroy the affidavit thereon, take out the ballot therein contained without permitting same to be unfolded or examined and having endorsed the ballot in like manner as other ballots are required to be endorsed, deposit the same in the proper ballot box and enter the elector's name in the poll list the same as if he had been present and voted in person. . . . This special election board shall cast these absentee votes and then shall open the ballot box and proceed to count and make out returns of all ballots cast absentee in the same way as is done at a regular polling place. This special canvassing board shall possess the same qualifications, be paid the same wage, and be subject to the same laws and penalties as regular election judges. . . ."

The questions which you present are the following:

"1.  Is Section 37, Subdivision 6, in conflict with Section 12 of the Election Code?

"2.  Is the voting box No. 26, which is created for absentee voting by the Commissioners' Court of Montague County, Texas, a valid voting box under Section 12 and Section 37, Subdivision 6 of the Election Code?"

The substance of the reasoning in the brief accompanying your request is that Election Box No. 26 is in fact the absentee precinct of Montague County. You point out that absentee votes from all precincts will be cast in this box and returns made from such box as are made from the other 25 boxes, and it will be presided over by three or more persons who must meet the requirements of election judges and are subject to the same law and penalties as regular election judges. If the designation of an election box for absentee voting was tantamount to the creation of an election precinct, then the boundaries of the precinct are coextensive with the boundaries of Montague County and embrace four justice precincts and four commissioners' precincts, contrary to the provisions of Section 12.

We have not been furnished with a copy of the court's order, but it would appear from the information you have furnished us that the term "election box" in the designation of an Election Box No. 26 was being used as a synonym for "polling place." We do not think the commissioners' court was required to take any action whatever in regard to defining an election precinct or a polling place for absentee voting. The election precincts which the court is authorized to create under Section 12 are those which are to be observed by voters who appear at the polls on election day, and the purpose of dividing the county into precincts is to fix the boundaries of the territory which each polling place is to serve. But Section 37 of the Election Code unequivocally provides for the casting of absentee ballots at the county clerk's office in county-wide elections and at the regular polling place in each election precinct where the election is less than county-wide. It was therefore unnecessary for the commissioners' court to designate the

polling place for casting absentee ballots in county-
wide elections or the territory which this polling
place was to serve, since the statute itself has al-
ready done so.

While we do not think the commissioners'
court was authorized to define an "election precinct
for absentee voting," if this was the effect of its
order it was not in conflict with the absentee voting
statute, as it did not attempt to designate a differ-
ent polling place from  that fixed by statute.  Sec-
tion 37 does not in terms constitute the entire county
the "election precinct for absentee voting" in county-
wide elections, but this view of the effect of its pro-
visions is not an unreasonable one.  The prohibition
in Section 12 against the formation of an election pre-
cinct out of two or more justice or commissioners'
precincts is not based upon any constitutional provi-
sion limiting the method of forming election precincts.
Consequently, we think it may well be within the power
of the Legislature to prescribe a special election
precinct for absentee voting purposes.  However, it is
unnecessary for us to determine in this opinion whether
that is the effect of the absentee voting provisions.
Since the Legislature itself has provided for the cast-
ing of absentee ballots in the clerk's office, we have
only to consider whether this provision can stand along-
side the general provisions of the Election Code regu-
lating the formation of election precincts, the desig-
nation of polling places, and the casting of ballots.

It is a firmly established principle of stat-
utory construction that where an enactment contains a
specific provision which is at variance with a general
provision in the same act, the specific provision is
treated as an exception to the general and controls the
subject matter which comes within its terms.  Lufkin v.
City of Galveston, 63 Tex. 437 (1885); City of Austin
v. Cahill, 99 Tex. 172, 88 S.W. 542 (1905); Gabbert v.
City of Brownwood, 176 S.W.2d 344 (Tex. Civ. App. 1943,
error ref.).  It follows that the specific provisions
of the Election Code relating to absentee voting should
be treated as exceptions to other provisions regulating
balloting generally.

We have pointed out that in our opinion the
term "election box" in the court order was used in the
sense of "polling place."  It seems likely that the in-
tent of this portion of the order was merely to author-
ize the supplying of the ballot boxes required in

absentee voting and to provide the manner of their identification.  Section 70 of the Election Code (Art. 7.05, Vernon's Election Code) provides for the marking of ballot boxes in the election precincts laid out by the commissioners' court.  Section 37 does not make specific provision for the marking of ballot boxes used at the county clerk's office in absentee voting.  The purpose of the provision for the marking of ballot boxes is to identify the source of the ballots which they contain, and so long as the designation of "Election Box No. 26" is understood as identifying boxes containing absentee ballots cast in the office of the County Clerk of Montague County, we do not believe this description would be contrary to any provision of the election law.  This opinion is not to be understood as holding that the designation used by the commissioners' court for the absentee polling place must be followed.  However, if that means of identification is used, we are of the opinion that it would be a sufficient compliance with the election laws.

## SUMMARY

In absentee voting, the provisions of Section 37 of the Election Code (Art. 5.05, Vernon's Election Code) relating to the method of casting absentee ballots control over general provisions in other sections of the Election Code.

APPROVED:

J. C. Davis, Jr.
County Affairs Division

E. Jacobson
Reviewing Assistant

Charles D. Mathews
First Assistant

MKW:wb

Yours very truly,

PRICE DANIEL
Attorney General

By *Mary K. Wall*

    Mary K. Wall
    Assistant