**SINCLAIR PIPE LINE COMPANY**
v.
**ARCHER COUNTY, TEXAS.**
Civ. A. No. 1010.

United States District Court
N. D. Texas, Wichita Falls Division.
Nov. 28, 1956.

DOOLEY, District Judge.

The plaintiff sued defendant to recover reimbursement of expenses totaling over $5,000 incurred in adapting some segments of an existing oil pipe line to certain public highway widening and construction projects, and additional relief was sought by declaratory judgment.

Under the terms of Title 116, Art. 6674q–4, in Vernon's Civil Statutes of Texas, all improvements to the State Highway System "shall be made under the exclusive and direct control of the State Highway Department and with appropriations made by the Legislature out of the State Highway Fund. * * * No further improvement of said system shall be made with the aid of or with any moneys furnished by the counties except the acquisition of right-of-ways which may be furnished by the counties, their subdivisions or defined road districts."

The permissible cooperation between the State Highway Commission and a county in the construction, widening or lengthening of a State Highway is amplified in said Title 116, Art. 6674n, and the part thereof presently material reads as follows:

"Whenever, in the judgment of the State Highway Commission, the use or acquisition of any land for road, right of way purposes * * * is necessary or convenient to any road to be constructed, reconstructed, maintained, widened, straightened or lengthened, * * * the same may be acquired by purchase or condemnation by the County Commissioners Court. Provided that the County in which the State Highway is located may pay for same out of the County Road and Bridge Fund or any available county funds.

"Any Commissioners Court is hereby authorized to secure by purchase or by condemnation on behalf of the State of Texas, any new or wider right of way * * * to be used in the construction, reconstruction or maintenance of State Highways and to pay for the same out of the County Road and Bridge

Cantey, Hanger, Johnson, Scarborough & Gooch, Fort Worth, Tex., for plaintiff.

Rogers, Eggers & Sherrill, Wichita Falls, Tex., Paul O. Wylie, Archer City, Tex., for defendant.

Fund, or out of any special road funds or any available county funds. * * * The State Highway Commission shall be charged with the duty of furnishing to the County Commissioners Court the plats or field notes of such right of way * * after which the Commissioners Court may, and is hereby authorized to purchase or condemn the same, with title to the State of Texas, in accordance with such field notes. * * * Provided that if the County Commissioners Court of any County in which such right of way is, in the judgment of the State Highway Commission, necessary for the construction of a part of a designated State Highway shall fail or refuse to secure by purchase or by condemnation for or on behalf of the State of Texas, such right of way or part thereof, immediately and as speedily as possible, * * * said State Highway Commission shall direct the Attorney General of Texas, to institute condemnation proceedings in the name of the State of Texas, for the purpose of securing such right of way."

█ A farm-to-market road, so designated by the State Highway Commission, is a part of the State Highway system. Gill v. Falls County, Tex.Civ.App., 243 S.W.2d 277.

In January 1953, the State Highway Commission took action recorded as Minute No. 33698, and the material part thereof is quoted, to-wit:

"Whereas, in Archer County, the appropriate county officials and the Texas Highway Department, in cooperation with each other, have selected for improvement the following roads:

"From end of F. M. Road 368 at Dad's Corner Southwest to State Highway 25, a distance of approximately 7.0 miles.

    *    *    *    *    *    *

"Now, Therefore, It Is Ordered that the above described roads be designated as Farm-To-Market Roads and improved to provide two-lane, dustless surfaces, subject to the condition that Archer County will furnish all required right of way free of cost to the State.

"Upon acceptance by the County and fulfillment of the conditions of this Order, the State Highway Engineer is directed to proceed with construction in the most feasible and economical manner, at an estimated cost of $154,200.00, and to assume the roads for maintenance upon completion of construction."

On February 9, 1953, at a regular term, the Commissioners Court of Archer County, upon a motion duly made and passed, approved the foregoing Minute No. 33698 of the Texas Highway Commission, and also ordered "that Archer County will furnish all required right of way free of cost to the State."

At the October 1953 meeting of the State Highway Commission action was taken and recorded as Minute No. 34999, and in material part same is next quoted, to-wit:

"In Archer County the following described roads are hereby designated as Farm-To-Market Roads subject to the availability of funds in the Farm-To-Market Fund * * *, and subject to the further condition that Archer County will furnish all required right of way free of cost to the State:

"From end of F. M. Road 374, 3 miles South of Megargel, South to Young County line, a distance of approximately 1.5 miles.

    *    *    *    *    *    *

"Upon acceptance by the County and fulfillment of the conditions of this Order, the State Highway Engineer is directed to proceed with construction in the most feasible and economical manner, at an estimated cost of $105,000.00, and to assume the roads for maintenance upon completion of construction."

In the evidence the last mentioned road construction is referred to as Farm-To-Market Road No. 210.

On November 9, 1953, at a meeting of the Commissioners Court of Archer County, upon motion duly made and passed, it was resolved that said Minute No. 34999 of the State Highway Commission "be accepted."

The State Highway Commission filled out some of their regular right-of-way grant forms with the names of the grantors and the field notes of the right-of-way tracts desired for the said road and highway work, and delivered same to the Commissioners Court of Archer County. The Commissioners Court then, at some expense to the County, saw to it that said right-of-way grants were duly executed by the landowners and returned to the State Highway Commission.

Some time before these highway projects in question were undertaken the plaintiff Sinclair Pipe Line Company had laid pipe lines of different sizes for the movement of oil, and at several locations, where these pipe lines crossed under a roadway to be improved, or ran parallel and would be overlaid by the widened section of a roadway, there was enough problem to require prudent readjustments there of the pipe lines, by relocation of some pipe, and setting other pipe lower in the ground and making extensions of the outer casing around certain pipe lines, where same crossed under the pre-existing roads or highways. The pipe lines in question were part of a rather extensive pipe line system, and where on private property, the plaintiff either had laid same under the authority of valid right-of-way easements, or else had laid and maintained same for such length of time as to ripen a prescriptive claim to the right-of-way easement, and where same crossed under pre-existing roads, the pipe had been laid by authority of a State statute. The relocated pipe line, in each instance, was moved only a few feet and consisted of short segments, excepting one segment a little more than a mile long. Archer County is in the midst of a developed oil and gas field and somewhat a network of pipe lines is located in the County.

The reasonable cost for the adjustments in the pipe lines which the plaintiff found it necessary to make in connection with these highway projects was the amount alleged in the plaintiff's second amended petition. No condemnation proceeding was brought by either the State or County against the plaintiff in respect to its pipe line easements, and the plaintiff did not file any action beforehand or during the highway work in question to restrain the prosecution of such work until a settlement was made with the plaintiff. The plaintiff knew from the outset, or at least from an early stage of the highway work in question, that same would necessitate some adjustments in the location or depth of its nearby pipe lines.

The State Highway Commission either knew before, or else learned shortly after the first work began upon these highway jobs that the plaintiff's pipe lines would be affected by such improvements, but the State Commission never did call on the Commissioners Court of Archer County to bring any condemnation action or seek a release of any damages from the plaintiff company.

The State Highway Commission let contracts to independent contractors for the construction of all these road improvements. First, a contract was let for the work on Highway 368 in the last half of 1954, and, later, a contract was let for the work on Highway 210 in the last half of 1955, as best can be told from the record. In January 1955, the plaintiff filed a claim for damages in the amount of expenses incurred to readjust its pipe lines in connection with Highway 368, and in November 1955, filed a similar claim in connection with Highway 210. The plaintiff was notified in June 1955 that the County rejected its first said claim and would also reject the later said claim.

The undertaking of the County to "furnish all required right-of-way free of cost to the State", was not a statutory obligation, since the County could at its

own will either agree or decline to assist by obtaining the required right-of-way, and, consequently, the quoted provision is simply a contractual agreement.

■ No proof was made that the State Highway Commission and Archer County came to a mutual understanding that the County would be liable for any required settlement of damages to a pipe line owner affected by the highway improvements in question, nor that either said Highway Commission or the County assumed that it would be subject to any such liability, nor that the State Highway Commission has ever made any claim that the County is bound to pay the valid claim of any such pipe line owner. In fact, any such contention would seem farfetched. The County's obligation was to furnish the necessary grants of easements for widened or new rights-of-way required for the proposed highway improvements, but in the performance of that undertaking it would not need necessarily to even contact the plaintiff, for certainly the plaintiff was without any legal power to grant or create any of the desired rights-of-way for the purpose of the public highways. Plaintiff did not put in evidence any of the writings under which it holds some of its right-of-way interests, and, consequently, the particular terms thereof cannot be dealt with in a specific way, but it does not claim to hold any interest more than an appurtenant easement for use as a pipe line right-of-way. It is elementary that such an easement grants only a user privilege, and not any title or ownership in the land.[1]

■ In this instance, the easement user is for the underground location of a pipe line. The plaintiff could not have been deprived of a right-of-way for a public highway as it did not own that kind of a right-of-way. Neither has the plaintiff's pipe line right-of-way been "taken" for the benefit of the highway improvements, as will be pointed out again later. Its only concern is from the standpoint of whatever damages in the way of expenses were incurred by the changes made to facilitate the continued use and operation of its underground pipe line. The fair meaning of the County's undertaking to provide the required rights-of-way at its own cost would not be broad enough to include a mere damage claim by some interested owner other than the persons having the legal right to grant a right-of-way for the purpose of a public highway. The fee owners of the land, subject to plaintiff's pipe line right-of-way, were legally competent to grant a later right-of-way for a public highway, either overlapping or overlying the plaintiff's pipe line right-of-way, if such additional use would not unreasonably hinder the rights of plaintiff as owner of its right-of-way.[2] Apparently, no contention is made that the construction and use of the highway improvements, at places where the highway right-of-way and the pipe line right-of-way are in juxtaposition, has been found inconsistent with the continuing use of the pipe line right-of-way substantially as well as in the past.

The public highways, of course, are essential in the general welfare, and it is reasonable that the holder of a pipe line right-of-way, such as plaintiff, should, when feasible, coordinate the pipe line's use with the highway use, where both uses will be coexisting in the same premises. This rule is recognized even in relations between private persons and companies.[3] The record in this case shows that it was feasible, within reasonable bounds of expense, to adjust the particular affected segments of the plaintiff's pipe lines with the right-of-way being used for the highway improvements. The adjustment has been completed and the plaintiff has continued the full use

1. Harrison v. Boring, 44 Tex. 255, 267.

2. City of Pasadena v. California-Michigan Land & Water Co., 17 Cal.2d 576, 110 P.2d 983, 133 A.L.R. 1186, and Perley v. City of Cambridge, 220 Mass. 507, 108 N.E. 494, L.R.A.1915E, 432.

3. Kelsay v. Lone Star Gas Co., Tex.Civ. App., 296 S.W. 954, 955; Cozby v. Armstrong, Tex.Civ.App., 205 S.W.2d 403.

of its pipe line. Evidently, the segments of the pipe line which were merely lowered are still in the same right-of-way heretofore used by the plaintiff and, for aught that is shown, the segments which were relocated a few feet away also may still be within the preexisting pipe line right-of-way, so far as the width of such right-of-way may have been defined. The plain fact is that the plaintiff has and is now using a right-of-way for its pipe line and to all intents and purposes it is the same right-of-way used in the past. In other words, as already indicated, it is inaccurate to say that any of the plaintiff's right-of-way has been "taken" in the sense that term is used in the law of condemnation. The only thing that might be spoken of as a "taking" would be in reference to the plaintiff's outlay of money in making the adjustments in its pipe line. Of course, the plaintiff is entitled to reimbursement from the proper source for such expenditures.[4]

■ Neither the agreement between the State Highway Commission and the County, nor the wholly preliminary acts of the County in obtaining right-of-way easements for the highway improvements in question, render the County liable in law for damages of the kind sought by the plaintiff in this suit, and while there seems to be no case squarely in point in all the material elements of factual details, there are a number of precedents which clearly tend to exonerate the County under the facts and circumstances of this suit.[5] The important matters are that the County did not initiate, direct, provide plans or specifications, supervise or control or otherwise have any active part in the actual construction of the highway improvements, nor any control or authority over such highways either before or after the improvement project.

The City of Wichita Falls case, cited in Footnote 5, is questioned in the Gabbert case, cited with it, but that does not detract from the pertinency of either case in the present litigation. Each of those cases was brought against a city. In one the court held that the jurisdiction and control of the city street in question, being a segment of a State highway, had been lodged in the State Highway Commission, and, for that reason, the city was not liable to the plaintiff, while in the other the court held that because of the city charter and certain statutes peculiar to municipal corporations, the jurisdiction and control of the city street in question, though part of a State highway, was still reserved to the city, and for that reason it was liable to the plaintiff. The discussion of the law in both cases, however, makes it crystal clear there is no disagreement on the proposition that counties have been wholly supplanted by the State Highway Commission in the control and supervision of State highways. In other words, the two decisions, while contrary in part, yet join to negative any liability of the present County defendant. It will be noted that the Gabbert case cites the statutes and cases which thoroughly settle the point that County Commissioners Courts have been shorn of jurisdiction and supervision over any parts of the State Highway system.

4. Panhandle Eastern Pipe Line Co. v. State Highway Commission of Kansas, 294 U.S. 613, 55 S.Ct. 563, 79 L.Ed. 1090. This case, as seems evident from the citation of State of Washington ex rel. Oregon R. & Nav. Co. v. Fairchild, 224 U.S. 510, 523, 32 S.Ct. 535, 56 L.Ed. 863, doubtless means that the thing "taken" would be the money spent in making changes in the pipe line; Buckeye Pipe Line Co. v. Keating, 7 Cir., 229 F.2d 795; Petition of Dreosch, 233 Minn. 274,

47 N.W.2d 106; and Central Power & Light Co. v. Willacy County, Tex.Civ. App., 14 S.W.2d 102.

5. City of Wichita Falls v. Real Estate Trust, Tex.Civ.App., 135 S.W.2d 736; Gabbert v. City of Brownwood, Tex.Civ. App., 176 S.W.2d 344; Iverson v. Dallas County, Tex.Civ.App., 110 S.W.2d 255, and Philpott v. Monroe County, 293 Ky. 236, 168 S.W.2d 749.

It follows from what has been said herein that the plaintiff is denied any declaratory relief or any recovery of damages against the defendant, and a judgment in such terms should be drawn and presented promptly.