

# THE ATTORNEY GENERAL

## OF TEXAS

### AUSTIN 11, TEXAS

WILL WILSON
ATTORNEY GENERAL

October 26, 1962

Honorable Samuel W. Freas
Criminal District Attorney
Polk County Courthouse
Livingston, Texas

Opinion No. WW-1460

Re: Whether a county is liable to
a pipeline company for expenses
incurred in encasing and vent-
ing that portion of its pipe-
line which lies in a pre-exist-
ing easement under property ac-
quired for the location of a
new road, when neither the
county nor the State Highway
Department have required that
the pipe be encased and vented.

Dear Mr. Freas:

This will acknowledge your request for an opinion on the above
subject.

As we understand the problem, a pipeline company has for some
time owned an easement for pipeline purposes under certain prop-
erty in Polk County. Under the Farm to Market Road program, the
State Highway Commission designated a new location for Farm Road
2714, subject to the condition that Polk County furnish or acquire
right of way clear of obstructions and free of cost to the State.
This new location will cross the pipeline easement at approximately
right angles, and the pipeline company is contending that the
county should pay the expense for encasing and venting the pipe
for that portion of the line over which the new road will pass,
although neither the County nor the State Highway Department have
required that the line be encased and vented. The county has ac-
quired from the owner of the fee the right of way for the con-
struction of the road, but has not attempted to acquire, by pur-
chase or condemnation, any rights from the pipeline company in
connection with the construction of the road across its pipeline
easement.

This office has on several occasions held that a pipeline
company cannot be required to encase and vent that portion of its
pipeline which lies within a prior or pre-existing easement under
property subsequently acquired by the county for roadway purposes,
without compensating the pipeline company therefor. Opinion No.
WW-1090 (July 12, 1961) and opinions cited therein. In those

opinions the lowering, encasing or other alterations in the exist-
ing pipeline were required by the County or State and the expenses
were incurred in meeting such State or County specifications. In
the instant situation neither the State nor County have required
that the pipeline be encased or vented, and accordingly we are
presented with a situation different from those dealt with in the
prior opinions.

It is well established that an oil pipeline easement is
"property" within the constitutional provision prohibiting the
taking or damaging of property for public use without adequate
compensation. Magnolia Pipeline Co. v. City of Tyler, 348 S.W.2d
537 (Civ.App. 1961, error refused). Therefore, the only question
that here needs to be decided is whether the construction of the
road across the pipeline easement amounts to a "taking or damag-
ing" in the constitutional sense, or is such an interference with
the company's private property right in the easement as to amount
to a taking or damaging which would require adequate compensation.

"Damage" is defined in the Magnolia Pipeline Co. v. City of
Tyler case, supra, as follows:

> "By damage is meant every loss or diminution of what
> is a man's own, occasioned by the fault of another,
> whether this results directly to the thing owned, or be
> but an interference with the right which the owner has
> to the legal and proper use of his own."

The general rule regarding situations of this type is set
forth in Nichols, The Law of Eminent Domain, (Third Edition), Vol.
2, Sect. 5.4 /1_7, page 56, as follows:

> "While in (most) jurisdictions the concurrent use of
> the property of a public service corporation is a tak-
> ing, when such a corporation owns only an easement in
> the land which it occupies, the imposition of another
> easement upon the same land which does not interfere
> with the complete and undisturbed enjoyment of the
> original easement, although it may constitute a taking
> of the property of the owner of the fee, as it is not
> an invasion, destruction or use of the easement, is not
> a taking of the property of the first corporation in the
> constitutional sense. If there is an interference with
> the original use, there is a taking only to the extent
> of such interference." (Emphasis added.)

In the interest of safety and the preservation and develop-
ment of highways, the Texas Highway Department issued Administra-
tive Order No. 12-56, establishing its policy on pipeline encase-

ment at rural highway crossings. The pertinent portion of this order reads as follows:

"U.S. AND STATE HIGHWAYS

All gas and liquid fuel transmission lines shall be encased as prescribed in Item '1' for EXPRESS-WAYS, except that only one vent is required where length of casing is not over one hundred and fifty (150) feet. Gas distribution lines which do not carry a pressure of over 50# p.s.i. and which are not over six (6) inches in diameter, may be uncased provided the District Engineer approves the depth and quality of construction. All other gas distribution lines shall be encased throughout their length between outer roadway ditches, toe of slopes, or not less than five (5) feet behind outer curbs, whichever is greater.

* * *

"FARM ROADS

All pipelines carrying gas or liquid fuel shall be encased as prescribed in Item '1' for U. S. AND STATE HIGHWAYS, with the exception that for existing pipelines of this type the District Engineer may approve an adequate reinforced concrete slab cover or other equivalent protection in lieu of casing or casing extension." (Emphasis added.)

We are advised that the line here involved is a 24" gas pipeline and that when the road construction project was in the early stages, the Texas Highway Department Resident Engineer notified the pipeline company that the road was to be built and went with a representative of the company to the site where the road would cross the pipeline. The Resident Engineer showed the pipeline company representative that there would be an 8 or 9 foot fill over the line and advised him that the Highway Department would not require casing. The representative of the pipeline company advised the Resident Engineer that the company wanted the line cased and was going to case it, which the company subsequently did.

It is apparent that the Highway Department concluded that the 8 or 9 foot fill over the line amounted to "other equivalent protection in lieu of casing or casing extension" as provided in the above quoted administrative order, but the pipeline company considered that safety factors and its own operating policy require

the casing and venting of the line at this point.  In this connection, the operation of a gas transmission line, carrying a highly combustible material, is considered to be dangerous, <u>Lane v. Community Natural Gas Co.</u>, 133 Tex. 128, 123 S.W.2d 639 (1939), and it has been held that a gas transmission company has the obligation to exercise ordinary care for the protection of excavation or road construction employees involved in constructing a highway over the gas line, <u>Pioneer Natural Gas Company v. K & M Paving Company</u>, 359 S.W.2d 533, (Civ.App. 1962).

From what has been said, it appears that this office is being asked to decide a fact question, which is not a function of this department.  It seems clear that the company would not have gone to the expense of encasing and venting its pipe at this point except for the construction of the road across the easement.  Nevertheless, we cannot say from the facts presented that construction of the new road at this point actually hinders or interferes with the operation of the pipeline, or prevents the continuing use by the company of its pipeline easement at the present time substantially as well as in the past.  Nor can we say that encasing this line is either a necessary or an unnecessary precaution, considering the 8 or 9 foot fill covering the line at the road crossing and also considering the duty owed by a gas transmission company to the public traveling over this road and to maintenance or construction crews working in the right of way in the vicinity of the crossing.

In a similar case, <u>Sinclair Pipe Line Co. v. Archer County, Texas</u>, 147 F. Supp. 650 (N.D.Tex. 1957), 245 F.2d 79 (5th, 1957), cert. den. 355 U.S. 862, it was held that the county was not liable for expenses incurred by a pipeline company in voluntarily readjusting and altering its lines because of highway construction, the court pointing out in 147 F. Supp. at page 654 as follows:

"The fee owners of the land, subject to plaintiff's pipeline right-of-way, were legally competent to grant a later right-of-way for a public highway, either overlapping or overlying the plaintiff's pipeline right-of-way, <u>if such additional use would not unreasonably hinder the rights of plaintiff as owner of its right-of-way</u>. Apparently, no contention is made that the construction and use of the highway improvements, at places where the highway right-of-way and the pipeline right-of-way are in juxtaposition, <u>has been found inconsistent with the continuing use of the pipeline right-of-way substantially as well as in the past.</u>"  (Emphasis added.)

We accordingly are of the opinion that if construction of the road does not interfere with the pipeline company's use of its pre-existing easement and that if encasing and venting of the pipeline is not necessary from a safety factor, then the county is not liable for the expense incurred by the pipeline company on its own volition; otherwise, the pipeline company's pre-existing property right has been damaged to the extent of the expense incurred and the county is liable therefor, pursuant to its agreement to furnish the right of way clear of obstructions and free of cost to the State.

## S U M M A R Y

A county is not liable to a pipeline company for expenses incurred in encasing and venting that portion of its pipeline which lies in a pre-existing easement under property acquired for the location of a new road, when neither the county nor the State Highway Department have required that the pipe be encased and vented, unless the construction of the road in fact interferes with the pipeline company's use of its pre-existing easement or encasing and venting the pipe is necessary for safety purposes.

Yours very truly,

WILL WILSON
Attorney General of Texas

By

Morgan Nesbitt
Assistant

MN:da

APPROVED:

OPINION COMMITTEE
W. V. Geppert, Chairman

Scranton Jones
Malcolm Quick
L. P. Lollar
W. O. Shultz

REVIEWED FOR THE ATTORNEY GENERAL

BY: Leonard Passmore