## No. 9787.

### Chicago, Burlington & Quincy Railroad Co. *v.* The Public Utilities Commission of Colorado et al.

Decided November 8, 1920.

Proceedings to review an order of the utilities commission directing the opening of a street across a railroad right of way.

### *Order Vacated.*

1. Public Utilities Commission—*Powers—Police Power and Right of Eminent Domain Distinguished.* A railroad crossing may be ordered put in under the police power of the state; but land may be taken for a street only by the exercise of the right of eminent domain.

2. Eminent Domain—*Compensation.* Not only does the constitution guarantee the right of a person, whose property is taken for public use, to receive compensation therefor, but the right exists regardless of constitutional provisions.

3. Public Utilities Commission—*Powers.* The public utilities commission is without authority to order the opening of a street across a railroad right of way.

*Writ of Review to the Public Utilities Commission.*

Mr. E. E. Whitted, Mr. J. L. Rice, for petitioner.

Messrs. Coen & Sauter, for respondents.

*En banc.*

Mr. Justice Teller delivered the opinion of the court.

The question for determination in this case is as to the right of The Public Utilities Commission, by an order, without any proceeding in condemnation, to open a street across a railroad right of way.

The argument of counsel for the respondent is, in brief, as follows:

The state has delegated to the Commission a part of the police power, that is, the right to regulate railroad companies in various matters, including the putting in of street crossings, etc.

That being so, the order to put in a crossing is within the authority of the Commission, and the order should be affirmed.

The defect in this argument is due to a failure to distinguish between the police power, and the right of eminent domain; between the power to compel the installation of crossings, and the power to take land for streets, or other public purposes.

A crossing may be ordered put in under the police power of the state; land may be taken for a street only by the exercise of the right of eminent domain.

Throughout the brief for respondent, this misapprehension appears. Cases are cited to the effect that crossings may be ordered in, at the expense of railroad companies, and that uncompensated obedience to a regulation, enacted for the public safety under the police power of the state, is not a taking of private property without just compensation; with all of which we agree. Those cases have, however, no bearing on the question at issue. Indeed, the Commission seems to have first fallen into this error of supposing that the power to require the construction of

crossings was equivalent to the power to take land for a roadway across the tracks. The Commission's "Statement," preliminary to the order, discusses the necessity for a street across the tracks, and then orders the removal of the platform, and the installing of a crossing. It is apparently assumed that the order opened the street, as well as required the putting in of a crossing.

It is no where claimed that the Commission has the right of eminent domain; the contention is based entirely upon the assumption that the order, being valid as an exercise of police power, operated to open the street.

The distinction between the two powers above mentioned is universally recognized.

In 12 C. J. at page 905, it is said:

"The police power is to be clearly distinguished from the right of eminent domain; and the distinction lies in this, that in the exercise of the latter right private property is taken for public use and the owner is invariably entitled to compensation therefor, while the police power is usually exerted merely to regulate the use and enjoyment of property by the owner, or, if he is deprived of his property outright, it is not taken for public use, but rather destroyed in order to promote the general welfare of the public, and in neither case is the owner entitled to any compensation for any injury which he may sustain in consequence thereof, for the law considers that either the injury is *damnum absque injuria* or the owner is sufficiently compensated by sharing in the general benefits resulting from the exercise of the police power."

In *Lewis v. Eminent Domain* (2nd ed.), Sec. 6, the police power is said to be clearly distinguishable from the right of eminent domain. The author says:

"Under the one, the public welfare is prompted by regulating and restricting the use and enjoyment of property by the owner; under the other, the public welfare is promoted by taking the property from the owner and appropriating it to some particular use."

In 10 R. C. L. p. 7, in discussing the distinction between police power and eminent domain, it is said:

"The real distinction however lies in the fact that in eminent domain property or a right in property is taken from the owner and transferred to a public agency to be enjoyed by it as its own, whereas the police power, although it may and often does take property in the constitutional sense so that it must be paid for, yet this is not accomplished by a transfer of ownership, but by destroying the property or impairing its value."

It is manifest, then, that the discussion of the police power is wholly beside the mark. No case is cited, and we find none, which supports the contention of counsel.

On the other hand, there are many cases which recognize the necessity for a proceeding in condemnation to open a road across a railroad right of way.

In 24 L. R. A. (N. S.), in a note at page 1214, it is said:

"General power to lay out, extend, and open streets, when authority to condemn property is also conferred, will permit the opening of a street across a railway right of way."

To this note are cited cases from Georgia, Illinois, Minnesota, Missouri, Ohio, New York, Connecticut, Indiana, South Dakota and New Jersey.

On page 1226 of the same volume, in a note, it is said:

"As an easement in a railway right of way is property within a constitutional inhibition against taking or damaging private property for public use without compensation, it is generally held that a street or highway cannot be laid out or established across it without making compensation therefor."

To this note are cited cases from Arkansas, Connecticut, Georgia, Illinois, United States Supreme Court, Indiana, Kansas, Kentucky, Massachusetts, Michigan, Missouri, Nebraska, New Jersey and Pennsylvania. The note also points out that

"Notwithstanding a railway company must be compensated for the laying out of a street across its right of way,

yet the expense of constructing the crossing and its approaches may be lawfully imposed upon it."

The distinction is that the taking is under the right of eminent domain, while the regulating as to crossings and approaches is under the police power of this state.

In 15 Cyc. 669, it is said:

"A railroad company is entitled to compensation for the location of a public highway over or across its right of way."

In support of this text cases are cited from Illinois, Kansas, Massachusetts, New Jersey, Ohio and Pennsylvania.

The right of a person or corporation, whose property is taken for public use, to compensation therefor is guaranteed by both the state and the federal constitution. Such right, however, exists regardless of constitutional provisions. It is a settled principle of universal law, reaching back of all constitutional provisions, that the right to compensation is an incident to the exercise of the power of eminent domain. *C. B. & Q. R. Co. v. Chicago,* 166 U. S. 226.

The fact that property may be damaged or destroyed, without compensation, under the police power, has no bearing upon this controversy. Here the property is to be *taken,* and devoted to a public use, the railroad company retaining a right to its use, qualified by the right of the public to a new use. Property consists not in the thing said to be owned, but in the right to dominion over it, control of its use, and disposition. The thing owned may be tangible or intangible, a fee in land or an easement in it. A railroad company across whose tracks a street is opened loses the exclusive control,—which is property,—over the part devoted to street purposes, and hence a part of its property is "taken." Its right to compensation for that part is a natural right, protected by express constitutional provisions. Such is the declaration of the United States Supreme Court in the case last cited.

There is, moreover, no reason for giving to the Commission the right to condemn.

Paragraph 59 of Section 6525, R. S., 1908, gives express power to town and city councils to extend streets across railroads.

Paragraph 74 of said section provides that when it shall be deemed necessary by any municipal corporation to enter upon or take private property for any of the uses theretofore named, which includes street purposes, the same shall be examined, appraised and the damages thereon assessed, and the proceedings in connection therewith shall be in all respects the same as is now or may hereafter be provided by general law for the taking of private property for public or private use.

This shows that the legislature recognized that in carrying out the powers given by paragraph 59 the right of eminent domain was necessary to be granted, or at least that it was advisable to grant it. Doubtless, under the authorities, the right given in a previous paragraph of that section to extend and open streets would have given the right to cross railways by condemnation, but the matter is made clear by the paragraph in question.

If the citizens of Peetz want the street extended, they can doubtless induce the town council to take appropriate action to that end. This local action better accords with the principles of popular government, than does the committing of the matter to the determination of a state commission.

In every view of the case the conclusion is irresistible that the Commission did not regularly pursue its authority, and hence its order is invalid. The Commission is therefore directed to vacate the order.

Mr. Justice Scott and Mr. Justice Allen dissent.

Mr. Justice Bailey not participating.