PANHANDLE EASTERN PIPE LINE CO. *v.* STATE HIGHWAY COMMISSION.

No. 412.   Argued February 7, 1935.   Reargued March 13, 1935.— Decided April 1, 1935.

Mr. *G. J. Neuner,* with whom Mr. *Chester J. Gerkin* was on the brief, for appellant.

*Messrs. Otho W. Lomax* and *Wint Smith,* with whom *Mr. Kirke W. Dale* was on the brief, for appellee.

Mr. Justice McReynolds delivered the opinion of the Court.

The Kansas Highway Commission, administrative agency of the State, without any proceeding in condemnation, ordered the appellant Company to make specified changes in its transmission lines. It refused. By an original proceeding in the Supreme Court, the Commis-

sion obtained a peremptory writ of mandamus directing compliance. The Company insists that to enforce the Commission's order would deprive it of property without due process of law, contrary to the 14th Amendment.

Judgment went for the Commission upon the pleadings; there is no dispute concerning the facts; the validity of the statute said to authorize the order is challenged.

Appellant, a Delaware corporation with power to construct and maintain conduits for transporting natural gas, obtained authority to do business in Kansas, May 21, 1930, and during that year purchased from the owners rights of way for pipes, auxiliary telephone lines, etc. Thereafter, these were constructed; the gas passes in both interstate and intrastate commerce.

The Commission, created under c. 225, Acts of 1929, is charged with the duty to lay out, open, relocate, alter, redesignate and reëstablish highways throughout the State. Section 16 of that statute (Supp. Rev. Stats. 1931, also 1933, § 68–415)—copied in the margin*—undertakes to

---

* Chapter 225, Session Laws of Kansas, 1929.

"Sec. 16. Whenever any person, firm or any corporation created for the purpose of constructing and maintaining magnetic telegraph or telephone lines or for the purpose of constructing and maintaining lines for the transmission of electric current or for the purpose of transporting oil or gas or water by pipe lines, or municipal corporations, shall construct or maintain poles, piers, abutments, pipe lines or other fixtures along, upon or across any state highways, such poles, wires, piers, abutments, pipe lines and other fixtures shall be located upon that part of the right of way of said state highway designated by the state highway commission and the state highway commission is authorized and empowered to require the removal of such poles, piers, abutments, wires and pipe lines and other fixtures now upon state highways from the present location on said state highways to such part of the right of way of said state highways as the state highway commission shall designate, and if said person, firm or corporation, upon receiving notice of the requirement of the state highway commission that said poles, piers, abutments, wires, pipe lines

grant power to require removal of abutments, wires and pipe lines and other fixtures now upon state highways from the present locations thereon to other designated parts of the right of way. Unless imposed by this section, there are no statutory obligations upon pipe line companies with respect to the construction, maintenance or operation of their lines, whether located upon public highways or private lands.

After the pipes were in operation—1933—the Commission adopted plans for new highways across the Company's right of way at six widely separated places. Permission of the owners of the fee to use the necessary land was obtained; but appellant declined to permit the use of its right of way.

Plans for the new highways called for material changes in the pipe and telephone lines at the crossings—removals, lowerings, casements—estimated to cost above $5,000. All parties admit that the Commission could not make these with reasonable safety. Appellant was willing to do the work if promised repayment of the necessary expense. Purporting to act under § 16, (Dec. 1, 1933), the Commission ordered it to proceed without compensation. That the proposed changes would be proper for new highways as planned is admitted; also that the estimated cost

or other fixtures be moved as herein provided, fails to comply with such requirement of the state highway commission, the state highway commission may remove such poles, piers, abutments, wires, pipe lines and other fixtures to such place on the right of way of said state highways as may be designated by said state highway commission and the cost of such removal shall be paid to said state highway commission by said person, firm or corporation upon a statement of cost being furnished to said person, firm or corporation. If said person, firm or corporation refuses to pay said charges, the state highway commission shall notify the attorney-general, who shall bring suit against said person, firm or corporation in the name of the state highway commission to recover said amount, such amounts received from such persons, firms or corporations shall be placed in the fund from which the cost of such removal was paid."

is reasonable. But appellant denied the existence of power to impose this expense upon it; and for that reason refused to comply with the order until the Commission should agree to refund the outlay.

In its opinion supporting the peremptory mandamus, the court below declared [139 Kan. 185; 29 P. (2d) 1104]:

"The pipe line company's lines are all located on its own rights of way, procured from landowners, and none of the lines is located on, along, or across any previously existing highway."

"The highway commission has acquired rights of way for the highway improvements from landowners, but has not obtained consent of the pipe line company to cross or occupy its right of way. The highway improvements necessitate certain changes in the pipe line company's lines. In some instances it is necessary the pipe line be lowered and encased. In other instances it is necessary the pipe line and telephone line be removed to the outer edge of right of way newly acquired by the highway commission for the purpose of widening existing highways. None of the changes will require the pipe line company to acquire any new or additional right of way."

"The pipe line company contends that, because its rights of way were acquired and its structures were installed before the present highway rights of way had been obtained, and the present improvements had been initiated, it is entitled to compensation for all necessary expenditures incurred in making an adjustment of its private use to the later public use of the same rights of way."

"What the highway commission seeks to do is to execute the police power of the state to make public travel on the highways safe. Reasonable regulations to that end may be enforced without compensation to co-users of the highway whose structures make public travel

unsafe; and because the public use is paramount and public safety is the desideratum, it makes no difference whether the highway was established before or after the privately owned structures were established."

" There is no contention that exercise of the state's police power over the subject may not be committed to the state highway commission, and this was in fact done by c. 225, Laws 1929."

". . . section 16 of the statute provides in effect that whenever a pipe line is constructed along, upon or across any highway, its location is subject to control by the highway commission. . . . With route fixed, right of way procured, plans adopted, and the highway commission engaged in executing them, the new and widened highways are, for all purposes of the act, established and existing highways, upon which the pipe line company maintains its pipe lines, and location of the pipe lines is subject to regulation by the highway commission. . . . The statute does not authorize, and the orders of the highway commission do not involve, a taking of private property without due process of law."

If carried into effect, the challenged order of the Commission would result in taking private property for public use. *Oregon R. & N. Co.* v. *Fairchild,* 224 U. S. 510, 523, 524; *Southern Ry. Co.* v. *Virginia,* 290 U. S. 190, 194. A private right of way is an easement and is land. *United States* v. *Welch,* 217 U. S. 333, 339. No compensation was provided for; none was intended to be made. Ordinarily, at least, such taking is inhibited by the 14th Amendment. *Chicago, B. & Q. Ry. Co.* v. *Chicago,* 166 U. S. 226, 241; *Chicago, B. & Q. Ry.* v. *Drainage Comm'rs,* 200 U. S. 561, 593; *McCoy* v. *Union Elevated R. Co.,* 247 U. S. 354, 363; *Chicago, B. & Q. Ry. Co.* v. *Public Utilities Comm'n,* 69 Colo. 275, 279; 193 Pac. 726. See Lewis, Eminent Domain, (3d ed.) § 223.

A claim that action is being taken under the police power of the State cannot justify disregard of constitutional inhibitions. *Schlesinger* v. *Wisconsin,* 270 U. S. 230, 240; *Georgia Power Co.* v. *Decatur,* 281 U. S. 505, 508; *Southern Ry. Co.* v. *Virginia, supra,* p. 196.

While the court below held that the Commission exercised police power to make public travel safe, and to accomplish that end might require alteration of the lines without compensation, it repudiated the suggestion that the same reasoning would support an order to remove other lawful structures, e. g. compressor stations.

"Transmission lines of all kinds," it said, "are on the same footing with railroads with respect to grade crossings." *Erie R. Co.* v. *Public Utility Comm'rs,* 254 U. S. 394, was cited and relied upon.

We cannot accept the view that under the Federal Constitution appellant's transmission lines are upon the same footing as railroads. The opinion below declared there was adequate distinction between the two to justify different classification and treatment under the Act of 1929. And counsel for appellee very properly say: "A railroad grade crossing presents an entirely different problem for public regulation than does a pipeline buried beneath the highway. . . . The twenty-four inch high pressure natural gas transmission line of appellant when buried beneath the surface of such highways certainly is not a constant hazard to vehicular traffic."

The record fails to disclose that appellant's lines were the cause of serious danger to the public. Whatever of this, if any, would follow extensions of the highways across them is not comparable to the hazard incident to the operation of railroad trains. Like any other lawful structure these lines may have presented obstacles to construction of the proposed highways; but this might have been overcome by condemnation proceedings.

We are advised by counsel for the Commission that appellant's Delaware charter " contains no specific reference to any right to intersect or occupy any public highway, public land or waters." Also, that in Kansas " beyond the provisions of the statute, R. S. 1933 Supp., 68–415, [§ 16, c. 225, Acts of 1929] the validity of which is challenged in this case, there are absolutely no statutory obligations or regulations imposed upon pipeline companies with respect to the manner of the construction, maintenance or operation of their lines, whether located upon, along or across public highways or private lands."

Where the circumstances sufficed to show that the public would be subjected to serious danger from moving trains and supported the inference that the railroad company obtained permission to occupy the soil subject to reasonable legislation to prevent such danger, this Court has upheld orders, based upon the state's police power, to change tracks, eliminate grade crossings, etc.

" The company must be deemed to have laid its tracks within the corporate limits of the city subject to the condition—not, it is true, expressed, but necessarily implied—that new streets of the city might be opened and extended from time to time across its tracks as the public convenience required, and under such restrictions ' as might be prescribed by statute. . . . The plaintiff in error took its charter subject to the power of the State to provide for the safety of the public, in so far as the safety of the lives and persons of the people were involved in the operation of the railroad. The company laid its tracks subject to the condition necessarily implied that their use could be so regulated by competent authority as to insure the public safety." *Chicago, B. & Q. Ry. Co.* v. *Chicago,* 166 U. S. 226, 250, 252.

" The railway company accepted its franchise from the State, subject necessarily to the condition that it would conform at its own expense to any regulations not arbi-

trary in their character, as to the opening or use of streets, which had for their object the safety of the public, or the promotion of the public convenience, and which might, from time to time, be established by the municipality, when proceeding under legislative authority, within whose limits the company's business was conducted." *Cincinnati, I. & W. Ry. Co.* v. *Connersville,* 218 U. S. 336, 343. *Chicago, M. & St. P. Ry.* v. *Minneapolis,* 232 U. S. 430, 440.

*Erie R. Co.* v. *Board of Public Utility Comm'rs, supra,* opinion by Mr. Justice Holmes, goes upon the theory that it could be reasonably said that public safety required the changes, and that the order of the Commission " should be regarded as stating a condition that must be complied with if the company continues to use " the soil. Also, "the authority of the railroads to project their moving masses across thoroughfares must be taken to be subject to the implied limitation that it may be cut down whenever and so far as the safety of the public requires."

*Pennsylvania Coal Co.* v. *Mahon,* 260 U. S. 393, 413, 415–416, Mr. Justice Holmes again writing, elucidates the doctrine of the *Erie's* case.

"As long recognized, some values are enjoyed under an implied limitation and must yield to the police power. But obviously the implied limitation must have its limits, or the contract and due process clauses are gone. One fact for consideration in determining such limits is the extent of the diminution. When it reaches a certain magnitude, in most if not in all cases there must be an exercise of eminent domain and compensation to sustain the act."

Accordingly the court refused to sustain a Pennsylvania statute as an exercise of the police power which forbade the mining of anthracite coal under streets in such a way as to cause the subsidence of any structure used as a human habitation. " The rights of the public in a street

purchased or laid out by eminent domain are those that it has paid for. If in any case its representatives have been so short sighted as to acquire only surface rights without the right of support, we see no more authority for supplying the latter without compensation than there was for taking the right of way in the first place and refusing to pay for it because the public wanted it very much. . . . We are in danger of forgetting that a strong public desire to improve the public condition is not enough to warrant achieving the desire by a shorter cut than the constitutional way of paying for the change."

The rule in respect of railroad crossings applies when there is substantial risk of injury to the public from the operation of trains, and ground to imply the company's consent to take such measures as may be necessary to prevent the hazard. This Court has not sanctioned extension of the rule to wholly dissimilar circumstances; it does not apply to structures which are unattended by serious danger to the public.

The police power of a State, while not susceptible of definition with circumstantial precision, must be exercised within a limited ambit and is subordinate to constitutional limitations. It springs from the obligation of the State to protect its citizens and provide for the safety and good order of society. Under it there is no unrestricted authority to accomplish whatever the public may presently desire. It is the governmental power of self protection, and permits reasonable regulation of rights and property in particulars essential to the preservation of the community from injury. *New York & N. E. R. Co.* v. *Bristol,* 151 U. S. 556.

*New Orleans Gas Light Co.* v. *Drainage Commission,* 197 U. S. 453, and similar cases concerning pipes in public streets, are not controlling. In them the pipes were laid upon agreement, actual or implied, that the owner

would make reasonable changes when directed by the municipality.

As construed below, the challenged statute authorizes an arbitrary and unreasonable order by the State Highway Commission, whose enforcement would deprive appellant of rights guaranteed by the Federal Constitution.

The questioned judgment must be reversed and the cause remanded for further proceedings not inconsistent with this opinion.

*Reversed.*

MR. JUSTICE STONE and MR. JUSTICE CARDOZO concur in the result.