BUCKEYE PIPE LINE COMPANY,
Plaintiff-Appellee,

v.

Edward M. KEATING and Mercantile National Bank of Hammond, as Trustee,
Defendants-Appellants,

and

The Town of Highland, Lake County, Indiana, et al., Defendants-Appellees.

No. 11565.

United States Court of Appeals
Seventh Circuit.

Feb. 14, 1956.

Rehearing Denied March 13, 1956.

Owen W. Crumpacker, Theodore M. Gemberling, Lowell E. Enslen, Hammond, Ind., for the defendant-appellants. Crumpacker & Schroer, Hammond, Ind., of counsel.

Charles M. Wells, Indianapolis, Ind., Joseph E. Tinkham, Hammond, Ind., Willard B. Van Horne, Jr., Raymond B. Young, East Chicago, Ind., for appellee, Travis & Tinkham, Hammond, Ind., Barnes, Hickam, Pantzer & Boyd, Indianapolis, Ind., of counsel.

Before DUFFY, Chief Judge, FINNEGAN and SWAIM, Circuit Judges.

SWAIM, Circuit Judge.

This case involves a type of conflict that is often occurring throughout the United States. A pipe line, used for transporting crude oil, has been located and operated pursuant to an easement since 1888. In 1952 urban growth led to the subdivision of the land through which the pipe ran and the construction of houses, streets and all the requirements of a city residential area. Four of the streets of the subdivision cross the pipe line, and the foundation of the pavement of at least one of these would extend about two inches below the top of the pipe. The plaintiff claims that unless the pipe is lowered and incased it will be damaged by the impact of traffic over these streets and by increased corrosion caused by the paving materials. Each party wants the other to pay for lowering and incasing the pipe which the trial court found would cost $2,900.00.

In communities such as the one here involved conflicts due to changing land use often occur, and ordinarily the parties recognize the rights of all concerned and an agreement is reached. But in this case the owner of the pipe line, on the one hand, and the owners of the land and the city and its officials, on the other, refuse to make any concessions or come to any agreement. In the meantime, the pipe line is in danger of being damaged and the residents of the subdivision and others are forced to walk and drive through the mud because the streets have not been paved for twenty feet on each side of the pipe.

The easement, which the plaintiff claims is being interfered with, was granted in 1888:

"In Consideration of One Dollar, the receipt of which is hereby acknowledged, We J. H. Clough and C. G. Wicker of Chicago, Ill., individually and jointly have granted to The National Transit Company, its successors and assigns, the right to lay a pipe line across the following described land situated in Lake County, State of Indiana, viz:

" * * * It is understood and agreed that this right of way does not convey any fee interest in the land above described, together with the right to operate, maintain, repair and remove the same at any time. The pipe shall be laid along the route as indicated by the present survey, and be buried to such a depth as not to interfere with the cultivation of the land, or the existing tile drainage. The National Transit Company, its successors and assigns, agree to pay all damage to growing crops occasioned by laying, operating and removing said pipe line * * *."

In the same year an oil pipe line was constructed about one foot below the surface of the land described in the above grant. The present owners of the land and of the pipe line, who are parties in this litigation, are the successors to the parties of the original grant of the easement.

In 1910 the Town of Highland, Indiana, was incorporated south of the land through which the above easement was granted, and in 1952 that land was purchased by defendant Keating and subdivided to provide a residential area for Highland. This litigation arises because Buckeye Pipe Line Company claims that

the construction and use of streets over its pipe line will result in damage unless the pipe line is lowered and incased. Both parties claim that their interest in the land is superior and that the other party must pay for lowering and incasing the pipe line. The appellants also argue that the streets in question will not injure the pipe.

The plaintiff's pipe line runs north and south through the subdivision, Highland Terrace, and four of the new east-west streets in the subdivision cross the pipe. Each of these four streets has been graded and paved to within ten feet of each side of the pipe. The parties apparently are determined to leave the subdivision in this condition until the courts have settled their dispute.

Buckeye Pipe Line Company brought this suit against Edward M. Keating, who subdivided the land, Mercantile National Bank of Hammond, Indiana, the trustee of the subdivision, and the Town of Highland and its officials. Plaintiff prayed that its title in the easement be quieted against all the defendants, that the defendants be permanently enjoined from building any structure that would interfere with the pipe or its accessibility for maintenance purposes, and that $15,000.00 damages be awarded. The trial court found no evidence of actual damage to the pipe line, but did find that the four streets, if completed as planned, and the traffic thereon would be likely to injure the pipe at its present depth. The court held that Buckeye's easement was superior to any later acquired interest, and that the defendants would have to adapt their use of the land to the rights of the Pipe Line Company. The court's decree awarded no monetary damages but enjoined the defendants from paving the streets over the pipe line and required them to take whatever steps were necessary to prevent traffic from crossing over the pipe. The decree also provided, however, that the injunction would be dissolved when the pipe was incased and lowered or when the defendants paid $2,900.00 to cover the cost of incasing and lowering.

The appellants' principal argument is that the injunction was improper because there was no evidence that paving and using the streets would injure the pipe, and therefore the court was actually giving the plaintiff a fee simple interest in the land through which the easement ran. Not only was there sufficient evidence to substantiate the trial court's finding, but the record as a whole convinces us that injury to the pipe would be a probable result of paving and using the streets while the pipe is unprotected and at its present level.

Mr. Baque, an engineer for Buckeye, testified that the pipe should be incased in a larger steel pipe and lowered at the four cross streets in order to protect it from the weight, impact and vibration of traffic passing over it. He testified that the American Petroleum Institute recommended this type of incasing where oil pipes go under highways and railroads. On redirect examination Mr. Baque pointed out that the pipe was of "thread and collar construction" and that, unless protected in some manner, weight and vibration of traffic over it would cause leakage around the collars.

One of plaintiff's witnesses was Merle Nicewander, the town engineer of Highland and a graduate of the University of Illinois in Civil Engineering. During plaintiff's examination of Mr. Nicewander in rebuttal the court questioned the witness:

"The Court: I don't know whether my questions are clear. What I am trying to say is, without lowering the pipe line, knowing now its depth, can the streets be put in there as indicated, as they should be?

"The Witness: I think that they will come very close to clearing the pipe line. As was mentioned before, the pipe would go into the curb two inches. I didn't find that when I was out there, when we laid out the street, but as far as our improvements are concerned, we can go over the line. I wouldn't guarantee that the line isn't going to get some damage; I wouldn't say that there

won't be damage with traffic going over it." Original record, p. 540, printed transcript of record, p. 260.

There was also evidence that the cross streets would increase the pipe's rate of corrosion if it was left unprotected near the surface. Mr. Carl Swartz, a consulting metallurgist, was qualified by plaintiff as an expert witness on this subject. He testified that pipes such as this are subject to "electro-chemical" corrosion. This type of corrosion occurs when different sections of the same pipe are subject to different environmental conditions, especially with regard to water and oxygen. A road would tend to cause corrosion in a pipe which crossed close beneath it because it would alter the amounts of water and oxygen, among other things, in the ground surrounding the section of pipe over which it passed. The appellant's brief gives the impression that Swartz testified that a slag base would cause corrosion, but that a crushed limestone base would not. That impression is not entirely correct. During plaintiff's cross-examination, Mr. Swartz said that the likelihood of corrosion would be increased in the presence of both steelmill slag and crushed limestone. The important factor apparently is not so much the chemical composition of the material, but its density as affects the amount of water and oxygen passed through to the pipe. Later in cross-examination Mr. Swartz said that the material that would be least apt to cause corrosion would be anything that was finely packed so as to admit water slowly, such as a very tight, finely divided, well tamped in neutral clay.

Mr. Swartz also testified that there was another method to impede corrosion other than surrounding the pipe with a fill that would tend to keep water from it. The pipe could be covered by a "coarse aggregate," which if *properly drained* would let water run away from the pipe as fast as it seeped through from the surface. Mr. Swartz said that the "coarse aggregate" could be limestone, sandstone or gravel. The most important element in

this method of protecting the pipe is, of course, drainage, and it has not been shown that the appellants planned to put drains of any kind around this pipe. Mr. Swartz had visited the site in person and had seen the stone that had been spread over the pipe where the streets cross it. It is clear from his testimony that he thought that pavement over such stone would increase the possibility of corrosion to a pipe immediately beneath it.

■■ The owner of the fee may use the property through which the easement runs in any manner he desires, but he may not interfere with the plaintiff's enjoyment of its existing rights in the pipe line. Panhandle Eastern Pipe Line Co. v. State Highway Commission, 294 U.S. 613, 55 S.Ct. 563, 79 L.Ed. 1090. An easement is an interest in real property. It is expressed not in terms of possession or occupancy but in terms of use. Therefore, the property of the owner of an easement is taken from him not necessarily when the adverse party occupies the land, but only when he prevents or interferes with the owner's use of the easement. When that occurs there has been a taking of property from the owner of the easement just as much as if an adverse party had taken real estate which another owned in fee.

In the Panhandle case, supra, the Kansas Highway Commission tried, under authority of a Kansas statute, to force the pipe line company to remove or lower its pipe at its own expense. The Supreme Court held that this was a taking of property without due process of law. Insofar as the Court's opinion discloses, the pipe line company had only an easement authorizing it to run its pipe through the property in question.

■ It is well established that a party's acts will be enjoined when it is proved to the court's satisfaction that the unjustified taking of property will be the imminent result of such acts. Thomas v. Lauer, 227 Ind. 432, 86 N.E.2d 71. The injunction is, of course, not granting plaintiff a fee in the surface of the

land through which the pipe passes, as the appellants claim. It is simply giving effect to the irrefutable principle that an owner cannot use his land in such a manner, even in the public interest, that it destroys the property of another.

■ The appellants argue that this controversy is between private interests, Buckeye Pipe Line Company, and the general public, the residents of Highland Terrace, and that the public interest should prevail. The Panhandle case, supra, answers this contention. In that case the Supreme Court found a taking of private property for public use without compensation unconstitutional even though the state legislature had specifically provided for such a taking.

The defendants should have no trouble in complying with the part of the decree requiring them to keep traffic from passing over the pipe until the pipe is properly protected. The contractor did just that, by the use of barricades, while the streets were being paved. There is no reason why any one of the defendants could not see that this is continued.

■ Appellants finally contend that the plaintiff did not enter court with "clean hands." They allude to the various measures taken by Buckeye to inform all those involved of the presence of the pipe and the fact that the defendants would be liable for any damage done. We have examined the entire record very carefully, and find that the plaintiff's warnings were justified by the situation. If the defendants, knowing of the presence of the pipe, had proceeded with their construction and damaged it, they would have been liable not only to Buckeye but to anyone else who was damaged by escaping oil or by a resulting fire. Plaintiff was not only exercising its own right, but was being fair to defendants by warning everyone involved of the probable damage to the pipe line and of plaintiff's rights as the owner of the easement.

The judgment of the District Court is Affirmed.