**Orie DOSDALL, Plaintiff,**

v.

**R. B. FRASER and William Daum, Defendants.**

**Civ. No. 548.**

United States District Court
D. Montana,
Billings Division.

Oct. 12, 1965.

Joseph P. Hennessey, Billings, Mont., for plaintiff.

Crowley, Kilbourne, Haughey, Hanson & Gallagher and Sandall, Moses & Cavan, Billings, Mont., for defendants.

JAMESON, District Judge.

Plaintiff seeks (1) a judicial determination of conflicting lease claims to 160 acres of land on the Crow Indian Reservation owned by certain Crow Indians; (2) an order enjoining defendants from asserting any claims to the lands; and (3) a preliminary injunction to continue until the final determination of the action.

Defendants moved to dismiss on the ground that the court lacks jurisdiction (1) because the amount in controversy is less than $10,000, exclusive of interest and costs, and (2) because no federal question has been presented.

Plaintiff contends that the action is one which "arises under the Constitution, laws, or treaties of the United States" under 28 U.S.C.A. § 1331,[1] and

---

1. The complaint alleges that the action arises under and by virtue of Title 25, §§ 402, 403 and 483a, and Title 5, § 22, U.S.C.A. While the rights of the parties may be governed by these sections, they do not in themselves confer jurisdiction upon this court.

that the amount in controversy exceeds $10,000, exclusive of interest and costs.

Defendants first attacked the jurisdiction of the court at the hearing on plaintiff's application for a temporary injunction. At that time the court ruled that the jurisdictional issue should be determined before proceeding further with the hearing. Briefs were filed by the respective parties, and thereafter the motion to dismiss was set for hearing pursuant to Rule 12(d), F.R.Civ.P.[2] At the hearing oral testimony was submitted by both parties, and following the hearing both parties filed supplemental briefs.

On the basis of all of the evidence now before the court, including the oral testimony, affidavits, and all documents submitted, I conclude the defendants' motion to dismiss for failure by plaintiff to establish the existence of the required amount in controversy must be granted. It is, therefore, unnecessary to reach the issue of the existence of a federal question.

Plaintiff's amended complaint does contain the formal allegation that the amount in controversy exceeds $10,-000, exclusive of interest and costs.[3] Although such an allegation is sufficient from the standpoint of pleading (KVOS, Inc. v. Associated Press, 1936, 299 U.S. 269, 277, 57 S.Ct. 197, 81 L.Ed. 183; Yoder v. Assiniboine and Sioux Tribes of Fort Peck Indian Reservation, 9 Cir. 1964, 339 F.2d 360), when it was denied by the defendants it became an issue of fact which the plaintiff had the burden of establishing. McNutt v. General Motors Acceptance Corporation, 1936, 298 U.S. 178, 56 S.Ct. 780, 80 L.Ed. 1135; City of Forsyth v. Mountain States Power Co., 9 Cir., 1942, 127 F.2d 583; Yoder v. Assiniboine and Sioux Tribes of Fort Peck Indian Reservation, supra.

Plaintiff premises his entire argument on the assumption that the net profits which he could be expected to earn during the term of the lease represent the amount in controversy. In determining the propriety of this premise it is essential to keep in mind the nature of the relief sought by plaintiff. This is not an action for damages. No claim for either general or special damages resulting from the defendants' alleged wrongful holding of the property has been made.[4] Rather, the relief sought is equitable in nature, i. e., that the adverse claims of the parties be resolved, and that the defendants be enjoined from asserting any claim to the property. In essence plaintiff treats the defendants as trespassers upon his alleged leasehold interest. He seeks to quiet his leasehold title, and by injunction oust the defendants from possession.

It is well settled that in a suit seeking an injunction the amount in controversy for jurisdictional purposes is the value to the plaintiff of the right to be protected. McNutt v. General Motors Acceptance Corp., supra, Yoder v. Assiniboine and Sioux Tribes of Fort Peck Indian Reservation, supra; Purcell v. Summers, 4 Cir. 1942, 126 F.2d 390. Here the plaintiff seeks to protect his leasehold interest in the land. Accordingly, the basic issue for determination is: "What is the value of plaintiff's claimed lease right?" In determining

---

2. As the court said in Williams v. Minnesota Mining & Manufacturing Co., S.D. Cal., 14 F.R.D. 1, 5: "Rule 12(d) contemplates a 'preliminary hearing' and determination of jurisdictional issues in advance of the trial. * * * As a general rule * * * the trial court may, in its discretion, hear and determine issues of fact as to jurisdiction by receiving oral testimony and other evidence * * * or by receiving and weighing affidavits * * *."

3. Leave to file the amended complaint was granted at the hearing on plaintiff's motion for a preliminary injunction. The original complaint contained no allegations of jurisdictional amount. At the hearing plaintiff's counsel argued that this court had jurisdiction solely because the lessors were Indians and that jurisdictional amount was not required.

4. The complaint alleges that unless the defendants are restrained, the plaintiff "will suffer irreparable damage which the defendants will be unable to compensate him for".

the value of the lease right we must consider the crucial question of the yardstick to be used in measuring the value of the right. On this point the parties are sharply divided.

Neither counsel have cited, nor have I found, a case factually in point, However, decisions involving analogous situations do provide guidelines which I deem determinative of the instant case.

As noted supra, the plaintiff is, in effect, attempting to quiet title to his lease interests. In Smith v. Adams, 1889, 130 U.S. 167, 9 S.Ct. 566, 569, 32 L.Ed. 895, 898, the Court stated the rule applicable in quiet title actions: "Thus a suit to quiet the title to parcels of real property, or to remove a cloud therefrom, by which their use and enjoyment by the owner are impaired, is brought within the cognizance of the court, under the statute, only by the value of the property affected." See also Woodside v. Ciceroni, 9 Cir. 1889, 93 F. 1, and Jones v. Box Elder County, 10 Cir. 1931, 52 F.2d 340, cert. den. 285 U.S. 555, 52 S.Ct. 456, 76 L.Ed. 944. Similarily in Butters v. Carney, C.C.Nev., 1904, 127 F. 622, 623, a suit seeking to recover possession of realty, it was held that "it is not the value of the defendant's claim that constitutes the amount in controversy, but it is the value of the whole property which plaintiff claims * * *."

In actions to enjoin a trespass which would either destroy the use of the land or involve the land as a whole, the value of the land is considered to be the amount in controversy. Northern Pac. Ry. Co. v. Cunningham, C.C.Wash., 1900, 103 F. 708, 709; Colony Coal and Coke Corp. v. Napier, E.D.Ky., 1939, 28 F.Supp. 76; Swan Island Club, Inc. v. Ansell, 4 Cir. 1931, 51 F.2d 337. If the whole value of the property is not involved, but only a possessory interest, it has been held the value of the possessory interest controls

in determining the amount in controversy. Battle v. Atkinson, C.C.E.D.Ark., 1902, 115 F. 384, affirmed 191 U.S. 559, 24 S.Ct. 845, 48 L.Ed. 302; Pioneer Coal Co. v. Bush, E.D.Ky., 1936, 16 F.Supp. 117.

■ Although the instant case is distinguishable from the above decisions the relief sought involves many of the issues presented in those cases. The same rules are applicable. The "property" here is the lease and, except for plaintiff's argument that the value of the lease is to be measured by net profits, the conclusion seems inescapable that the amount in controversy is the rental value of the lease for the term.[5]

We turn now to a consideration of the plaintiff's argument that expected net profit is the proper basis for determining jurisdictional amount. Plaintiff cites one opinion from the Ninth Circuit, United States v. Cal-Bay Corp., 9 Cir. 1948, 169 F.2d 15, cert. den. 335 U.S. 859, 69 S.Ct. 134, 93 L.Ed. 406, and two Montana cases, Blaustein v. Pincus, 1913, 47 Mont. 202, 131 P. 1064, and Smith v. Fergus County, 1934, 98 Mont. 377, 39 P.2d 193. These cases do not deal with the question here presented and in my opinion are not in point. They simply hold that the item of expected profits is a proper element of damage. None involved the question of amount in controversy as a basis for the court's jurisdiction.[6] As noted supra, we are not here concerned with the issue of damages.

■ Moreover, the courts have repeatedly held in actions analogous to the instant case that damages are not to be considered in determining jurisdictional amount. This rule was well stated in Waller v. Prof. Ins. Corp., 5 Cir. 1961, 296 F.2d 545, 547–548:

"[C]ourts look to the value of the property involved rather than the

---

5. The entire rental paid by plaintiff is only about $2,750 and clearly does not meet the jurisdictional minimum.

6. The Cal-Bay case was an appeal from a damage award in a condemnation pro-

ceeding; Blaustein was an action for damages for constructive eviction of a tenant by the landlord; and Smith v. Fergus County was a damage action for breach of contract to lease.

damages that might be suffered, to determine the jurisdictional amount in suits for injunctions (Miller v. Woods, [1950] 87 U.S.App.D.C. 324, 185 F.2d 499), in suits for specific performance of a contract to convey realty (Ebensberger v. Sinclair Refining Co., 5 Cir., 1948, 165 F.2d 803, cert. denied 335 U.S. 816 [69 S. Ct. 35, 93 L.Ed. 371]), and in suits to remove a cloud from the title of realty (Jones v. Box Elder County, 10 Cir., 1931, 52 F.2d 340, cert. den. 285 U.S. 555 [52 S.Ct. 456, 76 L.Ed. 944]). Underlying these cases is the principle that when the validity of a contract or a right to property is called into question in its entirety, the value of the property controls the amount in controversy." [7]

■ In my opinion the profits which the plaintiff can expect to earn from the land during the term of the lease (and which conversely, he may lose if relief is not granted) are not directly in controversy. Any loss of profits as a result of the defendants' continued possession of the premises would be in the nature of damages and not indicative of the value of the lease. As stated in Pioneer Coal Co. v. Bush, supra, at 16 F. Supp. 119:

"Controlling decisions show that, in determining whether a jurisdictional requirement as to the sum or value of the matter in controversy is met, there should not be taken into consideration the value of a thing about which, under the issues in the suit, the court is not called on to concern itself in any way."

In determining the conflicting claims raised by the issues in this case the court would not be concerned with the question of profits to be made from the property by either party.

■ Even assuming, as plaintiff so strongly urges, that expected net profits determine the amount in controversy, plaintiff has failed to sustain his burden of proving that the jurisdictional minimum was met. At the final hearing pursuant to Rule 12(d), three witnesses testified: The plaintiff, Orie Dosdall; Joe Cormier, a disinterested person called on behalf of plaintiff; and the defendant William Daum.[8] Viewing the testimony of the three witnesses and all other evidence as a whole, it is clear that the plaintiff has failed to show net profit in excess of the $10,000 minimum required by statute.

Plaintiff testified that he would anticipate a gross income of $14,205, during the five year period of the lease. The defendant Daum estimated $14,726.40. The rental paid was approximately $2,750. Deducting this amount from the higher estimate leaves $11,976.40.

The parties agreed that during the term of the lease three crops would be taken from the land. At the hearing plaintiff was unable to testify with respect to the costs which would be incurred in producing a crop. Cormier, a farmer and rancher in the area for 37 years, testified that the costs of producing the crops would be at least 50 per cent of the gross income. He enumerated specific costs totalling from $10.00 to $11.00 per acre per crop year for tillage, seeding and harvesting. During the three crop years this would total from

7. See also Miles Laboratories, Inc. v. Seignious, E.D.S.C., 1939, 30 F.Supp. 549; Caron Corp. v. Wolf Drug Co., D.N.J., 1941, 40 F.Supp. 103; Calvert Distillers Corp. v. Rosen, N.D.Ill., 1953, 115 F.Supp. 146.

8. The parties were also given an opportunity to file supplemental briefs. Attached to plaintiff's brief filed on September 24, 1965, were certain charts, letters, and newspaper clippings which are apparently offered as additional evidence on the issue. None of this material is in affidavit form as contemplated by Rule 12(d), nor were the defendants given any opportunity to cross-examine on or rebut any of the material. Plaintiff was given an opportunity at two hearings to establish the jurisdictional amount, and in my opinion this material should not be considered. However, even if it is considered, I arrive at the same result.

$3,900 to $4,290.[9] Deducting these expenses from the $11,976.40 would result in a net profit of from $7,686.40 to $8,076.40. Defendant Daum, who is presently farming the land, testified that his costs in addition to rental were approximately $14.00 per acre. His computations indicated a maximum net profit of $5,846.40 for the term of the lease.

It is clear from the testimony of plaintiff's witness Cormier that the net profits from the lease would not total $10,000. Even if net profits were used to determine the amount in controversy, I must find from all the evidence that the jurisdictional minimum has not been established.

Under no construction of the facts and law has the plaintiff shown that jurisdiction of this court can be invoked. The action must be dismissed for want of jurisdiction.

---

9. These figures are based on 130 acres of crop land. All of defendant Daum's computations, (including the $14,726.40 figure) were based on 140 acres. Thus, if 140 acres were used as a basis for computing expenses the costs of production would run from $4,200 to $4,620.