**CITY OF GRAND PRAIRIE, Appellant,**

v.

**AMERICAN TELEPHONE AND TELE-
GRAPH COMPANY et al.,**
Appellees.

No. 25884.

United States Court of Appeals
Fifth Circuit.

Jan. 2, 1969.

Jerry D. Brownlow, Grand Prairie,
Tex., for appellant.

Edward F. Barnicle, Jr., Kansas City, Mo., H. P. Kucera, Ford Hall, J. H. Hand, Strasburger, Price, Kelton, Martin & Unis, Dallas, Tex.; for appellees.

Before GEWIN, PHILLIPS* and GOLDBERG, Circuit Judges.

PHILLIPS, Circuit Judge:

Can a Texas home rule city under its police power require a telephone company to lower underground conduits and cables at the expense of the utility in order to construct a public street, when the cables are located on an easement purchased and owned by the telephone company long prior to the opening of the street? This is the question before us on this appeal.

District Judge Sarah T. Hughes answered this question in the negative and rendered summary judgment in favor of plaintiffs-appellees, American Telephone & Telegraph Company and Southwestern Bell Telephone Company, against the City for $31,154.51 which was the cost incurred by the telephone company in relocating the conduits and cables. The District Court held that the easements owned by the telephone companies were property rights protected by Article 1, § 17, of the Constitution of Texas, Vernon's Ann.St. and the Fourteenth Amendment to the Constitution of the United States, that these property rights could not be defeated without the payment of just and fair compensation, and that the appropriate measure of damages was the cost of relocating and reconstructing the facilities. We affirm.

Jurisdiction is based upon diversity of citizenship.

On March 6, 1929, the telephone companies acquired two easements through farm lands located some distance from the City. The instruments conveying the easements granted the right to construct, operate and maintain underground conduits, cables, manholes and other fixtures and appurtenances to be buried to such depth as not to interfere with the ordinary cultivation of the land.

The telephone companies installed conduits in 1929 at a minimum depth of from 24 to 30 inches below the surface. In the conduits were put three telephone cables, known as the Dallas-El Paso cables. The cables and circuits installed in the right of way easements were used wholly for long distance communication services and not for local service to patrons residing in the area of the City of Grand Prairie.

The lands through which these easements were acquired were annexed into the City on May 15, 1961. Subsequent to the annexation the City became the owner of a right of way across the property which contained the conduits. The purpose of the acquisition was to construct a public street named Marshall Drive.

On June 23, 1964, the City adopted an ordinance regulating the construction and maintenance of underground utilities and requiring that they be located so as to cause minimum interference with the public use of streets. The ordinance contains this provision:

"In the event the City or its duly authorized representative shall elect to alter, construct or change the grade of, any street, alley or other public way, any person, firm or corporation subject to the terms of this ordinance, upon reasonable notice by the City, shall remove, re-lay and relocate its poles, wires, cables, underground conduit, manholes and other fixtures at its own expense."

Pursuant to this ordinance the City gave notice to the telephone company either to remove its conduits, cables or man holes or to lower them to a sufficient depth so that the City could proceed with the construction of Marshall Drive.

The telephone companies refused to comply with this demand at their own expense, asserting that the City was lia-

---

* Judge Harry Phillips of the Sixth Circuit, sitting by designation.

ble for the costs of relocation and reconstruction. In order to avoid delay in the paving of the street the parties entered into a written agreement to the effect that telephone companies would proceed to lower the installations but would reserve the right to claim reimbursement for the costs of relocation, to be determined by a court of competent jurisdiction.

■■ In support of its position that the City is not liable for the costs of relocation and that these costs are the lawful obligation of the telephone companies, the City relies upon the general rule that utilities are required to remove or relocate their facilities at their own expense from public highways and streets where necessary for improvement for public use and convenience. This principle was recognized by the Supreme Court of Texas in State of Texas v. City of Austin, 160 Tex. 348, 331 S.W.2d 737 (1960) and is generally accepted as the prevailing view. This doctrine is based upon the principle that when a state or municipal corporation grants to a utility the right to install facilities such as telephone poles, lines, conduits and cables on the right of way of a public highway or street, there is an implied condition that the facilities shall not interfere with the public use, either at the time they are placed in position or thereafter. If the highway or street is improved by widening or change of grade, the utility must relocate its facilities at its own expense. Nichols', The Law of Eminent Domain, (3d ed. 1963) §§ 5.85, 12.22.

■ In the instant case, the telephone companies did not locate their facilities on the right of way of a public street by permission of the municipal corporation. Here the facilities were located in a private easement acquired long prior to the planning, laying out and construction of the street. We agree with the holding of the District Judge that the general rule as stated in the *City of Austin* case has no application here.

A closely analogous Texas case is Magnolia Pipe Line Co. v. City of Tyler, 348 S.W.2d 537 (Tex.Civ.App.1961), application for writ of error refused. Magnolia had acquired two pipe line easements in 1931 for the construction and operation of a pipe line for the transportation of crude oil. The pipe line was buried in the easement promptly and at a proper depth. At that time the lands through which the easement ran were in a wooded rural area. In 1953 the lands were annexed into the corporate limits of the City of Tyler. The City paved a street over the pipe line, necessitating the lowering of the pipe line. The City insisted that Magnolia must bear the costs of lowering and encasing the pipe line under the pavement.

The Texas court held that the City was liable for the costs of relocation, saying:

"Magnolia's pipe line easement is property in the constitutional sense. 12 Am.Jur. p. 787, Sec. 157.

"An easement is an interest in land for which the owner is entitled to compensation as much so as if the land to which the easement is appurtenant were taken. 29 C.J.S. Eminent Domain § 105, p. 910; McLennan County v. Sinclair Pipe Line Company, Tex.Civ.App., 323 S.W.2d 471, wr. ref., n. r. e.; Panhandle Eastern Pipe Line Co. v. State Highway Comm. of Kansas, 294 U.S. 613, 55 S.Ct. 563, 79 L.Ed. 1090; Buckeye Pipe Line Co. v. Keating, 7 Cir., 229 F.2d 795; Forest Lawn Lot Owners Ass'n v. State, Tex.Civ.App., 248 S.W.2d 793; City of LaGrange v. Pieratt, 142 Tex. 23, 175 S.W.2d 243." 348 S.W.2d at 540.

The Court reached the following conclusion:

"Here the pipe line easements were private easements acquired by Magnolia about 30 years ago and the pipe line was constructed under rural

wooded farm land and did not cross under any existing highway, road or street, and no public utility franchise of any character was involved. While undoubtedly the police power of a city is vast, as outlined by the cases cited by appellee in its excellent brief, it is also clear that such power must be *validly exercised*. Since the pipe line easements were never dangerous to the public until the same were invaded by the City, and the dangerous conditions were proximately caused by the invasion of such easements by the City, we hold that the City under such circumstances could not in the guise of its police power take or damage Magnolia's easements without paying Magnolia adequate compensation therefor under Art. 1, Sec. 17, of our State Constitution, and under the Fourteenth Amendment of the United States Constitution." 348 S.W.2d at 543.

Citing this decision as authority, Nichols', The Law of Eminent Domain, § 15.22 (Supp.1968 at 258) added the following paragraph:

"Where, however, the utility facilities were installed pursuant to privately granted easements prior to the existence of the street, the public service corporation cannot be charged with the cost of relocating its pre-existing facilities. Indeed, *for such interference*, it may also recover the damage to its easement."

The Texas Court of Civil Appeals held to the same effect in Sinclair Pipe Line Co. v. State of Texas, 322 S.W.2d 58 (1959) and McLennan County v. Sinclair Refining Co., 323 S.W.2d 471 (1959), application for writ of error refused, no reversible error. In these cases the owner of previously acquired pipe line easements was held to be entitled to reimbursement for the costs of lowering the pipe necessitated by the construction and improvement of farm to market roads.

In Panhandle Eastern Pipe Line Co. v. State Highway Commission, 294 U.S. 613, 55 S.Ct. 563, 79 L.Ed. 1090 (1935), the Supreme Court held that a Kansas statute authorizing the State Highway Commission to order a pipe line company to relocate and make changes in its pipe and telephone lines, which then were located on a private right of way, deprived the company of its property without due process of law in violation of the Fourteenth Amendment.

The case of State of Tennessee v. United States, 6th Cir. 1958, 256 F.2d 244,[1] applied the distinction between the obligation of a telephone company to relocate at its own expense facilities located on the right of way of a public highway and the right of the utility to reimbursement for costs of relocating facilities situated on its own private easement. This was an eminent domain action to require the removal or relocation of telephone poles and lines for the purpose of widening an existing highway and establishing a scenic parkway approaching Gatlinburg, Tennessee, and the Great Smoky Mountains National Park. Some of the telephone lines and poles were located on the existing right of way. Others were located on private property off the existing highway. The Court held that where the telephone lines originally were installed on the right of way under a permissive grant by the State of Tennessee, and the lines obstructed the necessary widening and improvement of the highway, the State retained, under its police power, the right to require the telephone company to remove and relocate the telephone lines at the expense of the utility company. As to those lines which were located originally outside the highway right of way and on an easement over privately owned land taken for improvement

---

1. Judge Potter Stewart, then a judge of the Court of Appeals for the Sixth Circuit and now Associate Justice of the Supreme Court of the United States, was a member of the panel deciding this case.

and construction of the scenic highway, judgment was awarded in favor of the telephone company for costs of relocation.

The decision of the Supreme Court of Texas in State of Texas v. City of Austin, 331 S.W.2d 737 (1960), supra, which is relied upon by appellant, is no authority for the proposition that the municipal corporation can require relocation at utility expense of telephone cables on an easement owned by the utility. In that case the Court upheld the validity of a statute providing that the State of Texas shall bear the costs of relocation of utility facilities necessitated by the improvement of any highway established as a part of the National System of Interstate and Defense Highways, provided such relocation is eligible for federal participation. This decision recognizes that, except for the Texas statute, utilities would be required to bear the entire costs of relocating facilities previously placed on the right of way of a public street or highway. The issue presented in the present case was not involved in that litigation.

■ The City further contends that the District Court erred in holding that damages included the cost of relocation of the facilities in question and in allowing interest at six per cent from the date the telephone companies completed the relocation of the facilities at their own expense. We hold that the District Court was correct in allowing the costs of relocating and reconstructing the facilities as the appropriate measure of damages. See McLennan County v. Sinclair Refining Co., 323 S.W.2d 471, supra. We further hold that the District Court did not err in rendering judgment for interest from the date of completion of the relocation and reconstruction.

All other contentions made by the City have been considered and found to be without merit.

Affirmed.