**TENNECO, INC., Plaintiff,**

v.

**Glenn MAY et al., Defendants.**

**No. 2300.**

United States District Court,
E. D. Kentucky,
Lexington Division.

June 24, 1974.

.John E. Smith, Lancaster, Ky., R. Vincent Goodlett, Halzelrigg & Cox, Frankfort, Ky., for plaintiff.

William R. Bagby, Lexington, Ky., for defendants.

## MEMORANDUM

SWINFORD, District Judge.

On May 6, 1957, the plaintiff was granted an easement for an underground pipeline across the defendants' property. The pipeline was duly installed and maintained without interference with the servient estate. Early in 1971, the defendants commenced construction of a paved roadway over portions of the Tenneco easement. This action for injunctive relief and damages was initiated following the plaintiff's determination that the contemplated road and vehicle traffic would place excessive stress on the pipeline. An agreed order entered October 26, 1971, temporarily enjoining the defendants from using the affected area as a public thoroughfare enabled the plaintiffs to "encase" the pipe to withstand the pressures engendered by highway traffic. A hearing conducted on May 31, 1972, resulted in stipulations regarding most of the facts alleged in the complaint. The record is before the court for determination whether the defendants are responsible for the $4,903.-39 cost of strengthening the pipeline.

■ A peripheral issue is raised concerning the jurisdiction of this court. It is argued that the plaintiff's assertion of both federal question and diversity jurisdiction is without foundation. Although the complaint attempts to predicate jurisdiction upon 28 U.S.C. § 1337 and 15 U.S.C. § 717 et seq., it is evident that the federal aspects of this claim are at best insubstantial, and that the substantive issue resounds intrinsically in state law. Pan American Petroleum Corporation v. Cities Service Gas Company, D.Kan., 182 F.Supp. 439, 446 (1958). While the complaint's recitation of an amount in controversy exceeding $10,000 properly invoked 28 U.S.C. § 1332, the parties have since agreed that the damages incurred amounted to $4,903.39. The defendants mistakenly seize upon this reduction as grounds for dismissal for lack of subject matter jurisdiction. The requisite amount in controversy is ascertained at the commencement of the action, by reference to the good faith allegations of the complaint.

"(T)he sum claimed by the plaintiff controls if the claim is apparently made in good faith. It must appear to a legal certainty that the claim is really for less than the jurisdictional amount to justify dismissal. The inability of plaintiff to recover an

amount adequate to give the court jurisdiction does not show his bad faith or oust the jurisdiction. . . . But if, from the face of the pleadings, it is apparent, to a legal certainty, that the plaintiff cannot recover the amount claimed or if, from the proofs, the court is satisfied to a like certainty that the plaintiff never was entitled to recover that amount, and that his claim was therefore colorable for the purpose of conferring jurisdiction, the suit will be dismissed. Events occurring subsequent to the institution of suit which reduce the amount recoverable below the statutory limit do not oust jurisdiction." St. Paul Indemnity Co. v. Cab Co., 303 U.S. 283, 288–290, 58 S.Ct. 586, 590, 82 L.Ed. 845 (1938).

The complaint sought equitable relief preventing the defendants from continuing operations which would allegedly result in a disruption of operations costing in excess of $10,000. In injunction actions, "the amount in controversy is determined by the value of the property right sought to be protected against the alleged interference." Hulsenbusch v. Davidson Rubber Company, 8th Cir., 344 F.2d 730, 733 (1965). See also Garland v. Humble Oil & Refining Company, E. D.Tenn., 306 F.Supp. 608, 609 (1969); Dosdall v. Fraser, D.Mont., 246 F.Supp. 311, 313–314 (1965). The fact that the amount recoverable was subsequently stipulated at less than $10,000 does not defeat jurisdiction.

> "(W)here plaintiff, by stipulation, affidavit or amended pleading, reduces his claim below the requisite jurisdictional amount, the district court is not deprived of jurisdiction. . . . (E)vents subsequent to the filing of the complaint which reduce the amount recoverable will not affect Federal jurisdiction that has been initially properly invoked." DeLorenzo v. Federal Deposit Insurance Corporation, S.D.N.Y., 259 F.Supp. 193, 196 (1966).

St. Paul Indemnity Co. v. Cab Co., supra; Lewis v. Cook, 6th Cir., 409 F.2d 619 (1969).

The defendants admit the binding effect of the easement granted Tenneco, the construction of a paved street passing over the plaintiff's buried pipeline, and the costs incurred in strengthening the pipe. Although conceding that the original installation did not satisfy the minimum safety requirements for lines under public streets, the defendants are silent as to the propriety of the operations undertaken by the plaintiff. Consequently, the court must determine (1) whether the protective measures were necessary; (2) the liability of the defendants for the costs of encasing the pipe.

The testimony at the hearing conducted on May 31, 1972, left scant doubt as to the necessity of securing the pipeline against the increased hazards attendant to highway traffic. Three Tenneco employees testified without contradiction that prevention of damage to the line commanded buttressment capable of withstanding the added pressure.

The easement granted in 1957 described land used for agricultural purposes and is silent regarding the issue in the case at bar. The proper construction of the grant must therefore reflect the general philosophy underlying this area of the law. Holbrook v. Hammond, 302 Ky. 10, 13, 192 S.W.2d 746 (1946). The holder of an easement enjoys not the land itself but merely an incorporeal right respecting the property.

> "It is ancient law that nothing passes under an easement but what is necessary for its reasonable use and proper enjoyment. . . . 'It is not necessary that the grantor should expressly reserve any right which he may exercise consistently with a fair enjoyment of the grant. Such rights remain with him, because they are not granted , . . .'" City of Williamstown v. Ruby, Ky., 336 S.W.2d 544, 546 (1960).

At the same time, the grantee as owner of the dominant estate is entitled to the "free and unrestricted use of the passway . . ." Sandman v. Highland, 312 Ky. 128, 132, 226 S.W.2d 766, 768 (1950); although the easement must

impose the least possible burden, the servient holder "has no right to use the land subject to the easement in such a manner as to interfere with the reasonable and prudent exercise and enjoyment of the easement by its owner." Horky v. Kentucky Utilities Company, Ky., 336 S.W.2d 588, 589 (1960). This court is of the opinion that the road construction and concomitant necessity of encasing the pipeline constituted an unreasonable interference with the dominant estate.

The few decisions addressing this question have intimated that the easement holder should not be required to bear the costs made necessary by the landowner's development of the surface for his own profit. In Potter v. Northern Natural Gas Co., 201 Kan. 528, 441 P.2d 802 (1968), a landowner undertaking commercial development sued to require a pipeline company to bear the expense of lowering its pipe. Noting that requiring the defendant to bear the costs of alterations mandated by the landowner's project would engraft an additional term onto the lease, the court ruled that the dominant estate was not financially responsible for the interference visited by the development. Similarly, the court in Minard Run Oil Company v. Pennzoil Company, 419 Pa. 334, 214 A.2d 234 (1965), required the defendant to sink its pipeline to enable construction of a road on the part of the landowner, but placed the costs of such operation upon the landowner:

"For the defendants to object to the plaintiff's extending its road, so long as the extension in no way affects the use of their easement, would be to assume the attitude of a dog-in-the-manger whose yelping will not be heard in a court of equity.

"At the same time, for the plaintiff to demand that the defendants pay for what is being done for its own benefit would be like asking the miller to pay the farmer for the flour he has produced from the farmer's wheat. The lowering of the defendants' pipeline can in no way increase the defendants' profits or facilitate the discharge of their function which is to transport oil in a pipe. The status quo was entirely satisfactory to them. They in no way sought a change in the existing conditions. It is the plaintiff who desires to alter the status quo for its benefit . . ., and it should, therefore, be the plaintiff's obligation to pay for the achievement of its desire." Id. at 235.

In accord with this position are cases holding that due process demands appropriate compensation where state highway construction mandates pipeline relocation or modification. Although noting that the infringement attributable to highway construction is not properly classifiable as a "taking" in the sense of property condemnation, the court in Sinclair Pipe Line Company v. Archer County, Texas, N.D.Tex., 147 F.Supp. 650, aff'd 5th Cir., 245 F.2d 79 (1957), cert. denied 355 U.S. 862, 78 S.Ct. 96, 2 L.Ed.2d 69 (1957), did conclude that "the plaintiff is entitled to reimbursement from the proper source for . . . expenditures . . ." occasioned by the construction. Id. at 655. In Buckeye Pipeline Company v. Keating, 7th Cir., 229 F.2d 795 (1956), cert. denied 352 U.S. 830, 77 S.Ct. 44, 1 L. Ed.2d 51 (1957), the plaintiff sued to enjoin construction of a street over its pipeline. The trial court granted an injunction terminable upon the defendants' assumption of the costs of encasing and lowering the pipeline. Affirming, the Seventh Circuit relied on the holding in Panhandle Co. v. Highway Comm'n, 294 U.S. 613, 55 S.Ct. 563, 79 L.Ed. 1090 (1935), that property development could not unreasonably interfere with the dominant owner's enjoyment of its estate.

"The owner of the fee . . . may not interfere with the plaintiff's enjoyment of its existing rights in the pipe line. . . . (T)he property of the owner of an easement is taken from him not necessarily when the adverse party occupies the land, but only when he prevents or interferes with the owner's use of the easement.

. . .

*    *    *    *    *    *

"The injunction is . . . simply giving effect to the irrefutable principle that an owner cannot use his land in such a manner, even in the public interest, that it destroys the property of another." 229 F.2d at 798–799.

City of Grand Prairie v. American Telephone & Tel. Co., 5th Cir., 405 F.2d 1144 (1969); Annot., 28 A.L.R.2d 626; Cf. Babler v. Shell Pipe Line Corporation, E.D.Mo., 34 F.Supp. 10 (1940); Magnolia Pipeline Co. v. McCarter, Tex.Civ. App., 52 S.W.2d 663 (1932).

There is no indication that the Kentucky courts would deviate from the philosophy revealed in the cases above. Rather, the Court in Central Kentucky Natural Gas Co. v. Huls, Ky., 241 S.W. 2d 986 (1951), applied conforming principles in enjoining the construction of a building over a pipeline easement. Although Higdon v. Kentucky Gas Transmission Corporation, Ky., 448 S.W.2d 655 (1970), permitted construction of a mobile home pad over a pipeline, the opinion stressed both the remote likelihood of the necessity for pipe replacement and the utility's implied acquiescence in the commercial development of the area.

The defendants argue that the leases construed in the above cases contained language indicating that the servient estate would be continued as a farm; thus, the easement interpreted in Central Kentucky Natural Gas Co. v. Huls provided that "the lines be buried so as not to interfere with farming purposes", supra, 241 S.W.2d at 986. However, "the meaning of a conveyance is fixed by the conditions surrounding its execution." Restatement of Property, Section 484, note a, and there is no indication from the subject agreement that residential development was reasonably anticipated. Indeed, the terms of the 1957 conveyance reveal some intimation that the parties contemplated future agricultural use:

"The Grantee . . . agrees to pay for any damage to crops, fences and timber, which may arise from laying, constructing, maintaining, operating, altering, repairing, removing, changing the size of and replacing such pipe lines."

See Cameron v. Barton, Ky., 272 S.W.2d 40 (1954); Cincinnati, New Orleans & Texas Pac. Ry. Co. v. Barker, Ky., 247 S.W.2d 943 (1952); Tide-Water Pipe Co. v. Blair Holding Co., Inc., 42 N.J. 591, 202 A.2d 405 (1964).

Judgment will be entered for the plaintiffs in the amount of $4,903.39, plus interest and costs.